EDLETRAUD RUTHERFORD, ADMINISTRATRIX OF THE ESTATE OF GLENN F. RUTHERFORD v. BASS AIR CONDITIONING CO., INC., AND EARL S. SHELTON

No. 7812SC12

(Filed 21 November 1978)

1. Rules of Civil Procedure § 36— request for admission of facts—timeliness— method for objecting—failure to respond

The trial court properly ordered that plaintiff's request for admissions be deemed admitted because of defendants' failure to respond within the 20-day period allowed under then existing G.S. 1A-1, Rule 36, and defendants' contention that the request for admissions was a nullity because it was filed more than 120 days beyond the last required pleading of defendants is not determinative of the issue, since G.S. 1A-1, Rule 36, as it existed at the time of plaintiff's request, provided that, to avoid having requests deemed admitted, a party must respond within the period of the rule if there was any objection whatsoever to the request, and defendants therefore should have asserted the nullity of the request within the 20-day period.

2. Negligence § 27— failure to warn of dangerous condition—evidence of prior contract admissible

In a wrongful death action where plaintiff alleged negligent installation of a home air conditioning unit and negligent failure of defendant's employee to warn plaintiff's intestate of the dangerous condition alleged to exist in the air conditioning system when he serviced it one week prior to intestate's death, the trial court did not err in allowing testimony concerning the original installation contract or in instructing relative to the original installation and contract, though the court had previously granted defendants' motion for pretrial summary judgment in regard to plaintiff's allegations concerning negligent installation, since such evidence was probative of the fact that defendants were continually aware of the characteristics of the system and knew or should have known the dangerous condition of the unit when the employee made his service call; if defendants were concerned that the evidence might be understood by the jury to relate to a matter not in issue, defendants could have requested a limiting instruction; and the court properly instructed the jury, as requested by defendants, that the plaintiff's only cause of action arose from the alleged negligent conduct of defendant's employee who made the service call.

3. Death § 7.4— wrongful death—deceased's earning capacity—expert testimony —statistical computation not given

The trial court in a wrongful death action did not err in permitting testimony of an expert economist concerning the expected income of intestate, since, other than the statistical basis for the expert's calculations, the facts relating to the deceased's earning capacity which could be found by the jury were properly included in the hypothetical question put to the expert, and the failure to elaborate the expert's computations step by step went to the weight to be given his testimony, not to its admissibility.

Rutherford v. Air Conditioning Co.

**4. Appeal and Error § 30.3— unresponsive answer—motion to strike required— exception to denial required on appeal**

Where there is a voluntary statement by a witness not called for in the question, the only way to take advantage of the error is to move to strike the testimony and to except to the denial of that motion on appeal.

**5. Evidence § 55— expert in electrical engineering—personal observation—opinion admissible**

In a wrongful death action where the evidence tended to show that deceased was electrocuted when he came into contact with uninsulated wires while changing the air filter in his air conditioning unit, the trial court did not err in allowing a professor of electrical engineering from N. C. State University to testify, over objection, that it would not be necessary, for safety reasons, to cut off the power to the unit if the capacitor had been shielded properly or placed in a more remote location, since the witness had personally inspected the air conditioning unit in question and was qualified by opportunity, training and experience to give such an opinion.

**6. Death § 3.6; Negligence § 13.1— wrongful death action—electrocution—no contributory negligence as matter of law**

In a wrongful death action where the evidence tended to show that deceased was electrocuted when he came into contact with uninsulated wires while changing the air filter in his air conditioning unit, evidence was insufficient to show that decedent was contributorily negligent as a matter of law where the evidence did not show that deceased knew or in the exercise of reasonable care should have known of the dangerous condition of the capacitor, nor did it show that he failed to exercise due care to avoid contact with the starter coil when he attempted to change filters.

**7. Limitation of Actions §§ 3.1, 4.3— installation of air conditioning unit—wrongful death action seven years later barred—no revival**

Trial court properly granted summary judgment for defendants on plaintiff's claim for wrongful death based on negligent installation of an air conditioning unit and breach of warranty arising upon that installation, since plaintiff's action, instituted on 15 August 1972 and based on the installation which occurred on 20 July 1965, was barred by the three year statute of limitations of G.S. 1-52 and could not be revived by G.S. 1-15(b), which became effective three years after plaintiff's action was already barred.

APPEAL by defendants from *Herring, Judge.* Judgment entered 11 June 1977 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 28 September 1978.

Plaintiff, the duly qualified administratrix of the estate of Glenn F. Rutherford, instituted this action 15 August 1972 for the recovery of damages resulting from the wrongful death of Glenn F. Rutherford. The plaintiff alleged: (1) negligent installation of a home air conditioning unit in July of 1965, and (2) negligent

failure of Earl S. Shelton, employee of Bass Air Conditioning, to warn plaintiff's intestate of the dangerous condition alleged to exist in the air conditioning system when he serviced the system 24 August 1970, one week prior to decedent's death.

Defendants, Bass Air Conditioning Company, Inc. and Earl S. Shelton, answered the complaint 13 November 1972 denying the material allegations while averring contributory negligence and pleading the statute of limitations in bar of the action.

Plaintiff filed a request for admissions pursuant to G.S. 1A-1, Rule 36 on 3 August 1973. No answer or objection to the requests was filed when, on 2 May 1977, plaintiff filed a motion requesting the trial court to rule in its pretrial order that the requested admissions be deemed admitted. Defendants responded to plaintiff's motion on 9 May 1977 by requesting the trial court to deny the motion or in the alternative, in its discretion to accept the answers tendered with the response.

Plaintiff filed a motion for summary judgment 20 May 1977 seeking a ruling that, as a matter of law, defendants were negligent in installing the unit and in failing to warn of its dangerous condition. Defendants filed a cross-motion for summary judgment 23 May 1977 seeking to dismiss the action as barred by the statute of limitations. The trial court heard all three of the foregoing motions 1 June 1977. The court ordered that the plaintiff's requests for admissions be deemed admitted. He also ordered dismissal of plaintiff's cause of action insofar as it related to negligent installation.

The case was tried before a jury on the issue of defendants' negligent failure to warn the deceased of the dangerous condition of the air conditioning unit. At the trial, Mrs. Rutherford testified that her husband died as the result of an electrical shock received 31 August 1970, when he attempted to change the air filters of the central air conditioning unit in his home. She testified that shortly after moving into their home at 5461 Granger Place in Fayetteville in July of 1965, she and the decedent arranged with Bass Air Conditioning Company, Inc. to have a Carrier Weathermaking system attached to the existing gas furnace in their home and that three days after initial installation the system had to be modified to provide sufficient cooling.

Plaintiff's evidence further tended to show that from the time of installation until August of 1970, the system was serviced exclusively by Bass except when either deceased or the plaintiff periodically replaced the air filters accessible through that portion of the furnace located in the hall closet. The Rutherfords returned from a trip in August of 1970, and found their air conditioning unit malfunctioning. The deceased called Bass Air Conditioning Company, Inc. to service the system. Defendant, Earl S. Shelton, an employee of defendant Bass, responded to the service call. While working in the hall closet portion of the unit, Shelton noticed that the air filters were dirty and needed to be replaced. He told the plaintiff that he did not at that time have the correct size filters to replace those in the unit. Mrs. Rutherford testified that Shelton told her and her husband nothing about cutting the power off before changing the filters or about the danger posed by exposed wires on a starter coil which was added to the unit after its original installation. Testimony was presented indicating that Bass employees had installed the external capacitor, which was located in close proximity to the filters, to boost the power of the fan motor located in the furnace.

The director of the Cumberland County Electrical Inspection Department testified on behalf of the plaintiff that wires leading into the starter coil, which was added to boost the cooling system, were not insulated and that the electrical connectors were exposed and unshielded. He concluded that, in his opinion, the condition of the starter coil in close proximity to the air filters was unsafe and that the coil would have been safe as installed if properly shielded. Other experts testified that the unit was unsafe since anyone who changed filters would be exposed to unshielded electrical wiring.

The plaintiff introduced evidence concerning the decedent's life expectancy prior to his death, the decedent's family life, and his plans for the future. She presented an economist to testify to the present monetary value of lost services to the deceased's survivors. Certain admissions were then introduced over defendant's objection.

Defendants' motion for directed verdict on the grounds that plaintiff had failed to establish negligence and that plaintiff was contributorily negligent as a matter of law was denied.

The defendants produced evidence that tended to show that the unit installed by Bass did not contain a high voltage starter coil located within the furnace assembly unit and that the motor located within the unit which was boosted by the capacitor was a rebuilt model not normally installed by the defendant Bass.

Defendant Shelton testified that when he made the service call the unit contained no external starter coil. He further testified that he advised the Rutherfords to turn off the power to the unit when changing the filters so to avoid possible injury from the blower fan. Other testimony was presented from experts indicating that if the power had been turned off decedent would not have been harmed by contact with the coil. The former service manager of Bass presented testimony that tended to show that Bass had no reason to, and did not, install the unshielded coil which caused decedent's death.

Defendants' renewed motion for a directed verdict was denied at the conclusion of their evidence. The jury returned a verdict awarding plaintiff $190,350. The defendants' motion for a judgment notwithstanding the verdict or, in the alternative, a motion for a new trial were denied. From entry of judgment on the verdict defendant appeals.

Plaintiff cross-appeals asserting error in the trial court's granting of partial summary judgment ordering dismissal of plaintiff's allegations concerning negligent installation of the air conditioning unit.

*Barrington, Jones, Witcover & Carter, by Carl A. Barrington, Jr., Henry W. Witcover, and C. Bruce Armstrong, for plaintiff appellee.*

*Teague, Johnson, Patterson, Dilthey & Clay, by C. Woodrow Teague and Robert W. Kaylor, for defendant appellants.*

MORRIS, Judge.

Defendants have brought forward numerous assignments of error based on orders and rulings of the trial court. We will address each of their eleven supporting arguments in the order they appear in defendants' brief. Additionally, plaintiff assigns as error on cross-appeal the trial court's granting of summary judgment relating to the allegations of negligent installation of the air conditioning unit.

### Defendants' Appeal

[1]  The first question presented is whether the trial court properly ordered that plaintiff's request for admissions be deemed admitted because of defendants' failure to respond within the 20-day period allowed under then existing G.S. 1A-1, Rule 36. Counsel for plaintiff stated at oral argument that admission No. 15 was a crucial element of his proof on the source of the shock causing decedent's death. He also conceded that without admission No. 15, his other evidence at trial may have been insufficient to withstand a motion for directed verdict on the issue of proximate cause. Furthermore, the jury indicated the importance it placed on the admission when it returned to the courtroom during deliberations and requested that admission No. 15 be read again. The following statement was ordered to be deemed admitted:

> "15. That plaintiff's decedent died as the result of contacting an unshielded high voltage starter coil which was part of the air-conditioning system upon which work was performed as recited in Exhibit B."

Defendants argue that they were justified on two grounds in not responding to the request for admissions. First, defendants assert that the request for admissions was a nullity because it was filed more than 120 days beyond the last required pleading of defendants. Defendants' answer was filed 13 November 1972 and the request for admissions was filed 3 August 1973. The General Rules of Practice, Rule 8 provides:

> "All desired discovery shall be completed within 120 days of the date of the last required pleading. For good cause shown, a judge having jurisdiction may enlarge the period of discovery."

Secondly, defendants argue that the request for admissions failed to comply with G.S. 1A-1, Rule 36 as it appeared at the time the request was served. At that time G.S. 1A-1, Rule 36(a) required that the party requesting admissions designate in the request a period of not less than 20 days after service in which the opposing party must answer. Because of an apparent typographical error, plaintiff's request was technically defective. The request was filed on 3 August 1973 and required defendants "on or before the *3rd* (sic) day of August 1973", to admit or deny

certain matters. Plaintiff would have strictly complied with the rule had he demanded response by the *23rd* of August.

We do not find it necessary to determine whether there was a waiver of the period for discovery as contended by plaintiff. We find that the plain words of G.S. 1A-1, Rule 36, as they appeared in August of 1973, sufficiently dispose of this issue. The statute provided in pertinent part as follows:

". . . Each of the matters of which an admission is requested *shall* be deemed admitted unless, within a period . . . not less than 20 days . . . , the party to whom the request is directed serves upon the party requesting the admission either

(1) A sworn statement denying [matters] . . . or

(2) Written objections on the ground that some or all of the requested admissions are privileged or irrelevant or *that the request is otherwise improper in whole or in part.*" (Emphasis added.)

We understand G.S. 1A-1, Rule 36 to mean precisely what it says. A party, to avoid having the requests deemed admitted, must respond within the period of the rule if there is any objection whatsoever to the request. We find the following comment concerning the operation of the federal counterpart to N.C.R.C.P. 36 to be an accurate statement of the law as it should be in this State:

"The rule is quite explicit that matters shall be deemed admitted unless, within the specified time limits, a sworn statement is filed or objections made.[1] It is needlessly wasteful of judicial effort to allow a party to obtain a reversal on appeal because of an objection he could have but failed to make when the request was served." 8 Wright and Miller, Federal Practice and Procedure: Civil § 2259 at 726. *Contra, Campbell v. Blue*, 80 So. 2d 316 (Fla. 1955).

We note that the trial court, within its discretion, may allow the filing of an untimely answer when it will aid in the presentation of the merits and will not prejudice the party who made the request. *See* 8 Wright and Miller, supra, § 2257. However, in this

---

1. Under the present G.S. 1A-1, Rule 36 (1977 Cum. Supp.) it is no longer necessary to make a sworn statement. The rule now only requires that the response be signed by the party or counsel. Shuford, N.C. Civil Practice and Procedure § 36-6 (1977 Supp.).

case, there is nothing in the record indicating excusable neglect on the part of defendants. Furthermore, allowing the tendered response only days before trial would have prejudiced plaintiff by requiring the preparation of further evidence on issues that were assumed to have been resolved. We cannot say the trial court abused its discretion in refusing to accept the tendered response. Similarly, the trial court was correct in ordering the requests deemed admitted.

[2]  The defendants assert that the trial court committed prejudicial error when it allowed testimony concerning the original installation contract and when the court charged the jury relative to the original installation and the contract.[2] Defendants argue that the original contract and installation was irrelevant to the case before the jury since the court had previously granted defendants' motion for partial summary judgment in regard to those allegations concerning negligent installation. Plaintiff argues that such evidence was relevant to the issues of contributory negligence and defendants' knowledge of the condition of the air conditioning system. We agree with plaintiff.

The plaintiff's evidence concerning the contract for original installation by defendant Bass and the work they did on the unit to modify it, though incompetent on the issue of original negligent installation, is probative of the fact that defendants were continually aware of the characteristics of the system and knew or should have known the dangerous condition of the unit when defendant Shelton made his service call. It is clear that the evidence was relevant and a crucial element in establishing negligence. Counsel for defendants, if concerned that the evidence might be understood by the jury to relate to a matter not in issue, would have been entitled to a limiting instruction. *See generally* 1 Stansbury, N.C. Evidence § 79 (Brandis Rev. 1973). Furthermore, we do not find that the instructions of the court confused the issues and recapitulated irrelevant evidence. The trial court, after summarizing the evidence of the parties, instructed the jury, precisely as requested by the defendants, that the plaintiff's only cause of action arises from the alleged negligent conduct of defendant Shelton on 24 August 1970. This instruction was correct in law and sufficiently brought into focus

---

2. We note that the grounds for exception Nos. 5, 6, and 27 do not relate to assignment of error No. 3 and therefore will not be considered on appeal. Rule 10(c), North Carolina Rules of Appellate Procedure.

the issues of the case to avoid jury confusion. Defendant's second assignment of error is overruled.

[3]  Defendants further assign as error the trial court's permitting, over the objection of defendants, testimony of an expert economist. Defendants contend that an expert witness may not testify to the present monetary value of the decedent to the persons entitled to receive damages under G.S. 28A-18-2(b) unless either (1) the expert bases his opinion on a complete set of facts, figures, statistics and charts as presented into evidence or (2) the opinion is based on a formula presented to the jury and demonstrated to them by the use of neutral figures. The defendants' objection to the hypothetical question, which asked the expert if he had an opinion satisfactory to himself "as to the present monetary value of reasonably expected net income for the *statistical group of persons to which this deceased person belonged*", placed into issue whether the expert could give his opinion without first having placed into evidence the statistics, formulae, calculations and economic assumptions used in arriving at his opinion. There is no question but that, other than the statistical basis for his calculations, the facts relating to the deceased's earning capacity which could be found by the jury were properly included in the hypothetical question.

The facts, figures, statistics, and charts relied upon by the witness, although not offered into evidence, are customarily relied upon by persons in the profession. *See generally* McCormick, Evidence §§ 14-16 (2d Ed.). Based upon the better reasoned cases, such information may be relied upon by the expert regardless of whether admissible into evidence. *See e.g., State v. DeGregory,* 285 N.C. 122, 203 S.E. 2d 794 (1974) (medical expert allowed to testify based on personal knowledge and information found in patient's records); *Pots v. Howser,* 274 N.C. 49, 161 S.E. 2d 737 (1968) (medical expert allowed to give opinion as to what was shown by a report and x-ray not introduced into evidence but used in reaching his diagnosis); *see also* McCormick, Evidence, supra.

Although the North Carolina decisions do not involve expert testimony concerning the measure of damages in a wrongful death action, the principles established in cases of medical expert testimony are equally applicable to the case *sub judice.* The

diagnosis of illness or the cause of injury is within the expertise of physicians and is based upon all reliable information which physicians consider when making such a diagnosis. Similarly, an expert in economics commonly relies upon statistics and data relating to all aspects of the work force and economy which affect the present value of the loss of future income earning capacity. We note that the basis of defendants' objection is not that the measure of damages recoverable, as testified to by plaintiff's expert economist, is improper under G.S. 28A-18-2. *Cf. Wetherbee v. Elgin, J. & E. R. Co.*, 191 F. 2d 302 (7th Cir. 1951); *Heppner v. Atchison T. & S.F.R. Co.*, 297 S.W. 2d 497 (Mo. 1956); *Wawryszyn v. Ill. Cent. R. Co.*, 10 Ill. App. 2d 394, 135 N.E. 2d 154 (1956); *see generally* Annotation, 79 A.L.R. 2d 259 (1961).

It has been accurately observed that the probative value of expert testimony is probably weakened by the failure, as in this case, to elaborate on the expert's computations step by step. *See Thomas v. Potomac Electric Power Co.*, 266 F. Supp. 687 (D.C. Dist. Col. 1967). However, that is not to say that such testimony is a prerequisite to admissibility of the opinion. There are no North Carolina cases that require expert testimony to assist the jury in assessing damages in a wrongful death action. *Contra, Haddigan v. Harkins*, 441 F. 2d 844 (3d Cir. 1970) (jury required more guidance in measuring damages [decision may be affected by Federal Rules of Evidence, Rule 703]). However, if an expert is utilized, the traditional rule of evidence for the introduction of writings would still apply to require that certain statistics, charts, and tables offered into evidence have a proper foundation for their admission. *Plant v. Simmons*, 321 F. Supp. 735 (D.C. Md. 1970); *Bennett v. Denver & Rio Grande W.R. Co.*, 117 Utah 57, 213 P. 2d 325 (1950); *Mitchell v. Arrowhead Freight Lines*, 117 Utah 224, 214 P. 2d 620 (1950). In this case, we hold that the expert economist's testimony was competent. It is the function of cross-examination to expose the weaknesses of that expert's opinion. The primary limitation on the experts' analysis is that the court will not permit expert testimony based upon obviously inadequate data. *Schafer v. R.R.*, 266 N.C. 285, 145 S.E. 2d 887 (1966); *Branch v. Dempsey*, 265 N.C. 733, 145 S.E. 2d 395 (1965). We note, however, that whether certain data is a sufficient basis for an opinion will often be a matter within the witness' expertise. Although the lack of sufficient basis for testimony goes

primarily to the weight to be accorded such evidence, the courts have the inherent power to limit evidence when the chance of misleading the jury outweighs the probative value of the evidence. *See generally* 1 Stansbury, N.C. Evidence § 80 (Brandis Rev. 1973).

[4] Defendants complain that Mrs. Rutherford was allowed to testify in behalf of her dead husband and that such an assertion of what her deceased husband had not been told was inadmissible hearsay. The following appears in the record:

> "Q. . . . [W]hat, if anything, did any employee or agent or personnel from Bass ever tell you about turning the unit off when you changed the filters?
>
> A. We were never told anything . . .
>
> MR. NANCE: Objection.
>
> COURT: Overruled.
>
> MR. NANCE: Your Honor, my objection is to the statement 'we'. She can only answer for herself.
>
> COURT: Overruled."

The question calls for a non-objectionable, hearsay response from the witness to determine whether *she* had notice of the need to turn off the unit. The response sought is unobjectionable because it tends to establish the state of mind of the witness—whether she had knowledge of a warning. *See* Stansbury, N.C. Evidence § 141 (Brandis Rev. 1973). However, the response received contained an assertion that the decedent similarly had not been told to turn the unit off before changing filters. This fact was not, so far as can be ascertained from the record, within the witness' knowledge. This answer was not competent. Nevertheless, the proper procedure for defense counsel would have been to move to strike the incompetent and unresponsive portion of the answer. *See* Stansbury, supra, § 27. Where there is a voluntary statement by a witness not called for in the question, the only way to take advantage of the error is to move to strike the testimony and to except to the denial of that motion on appeal. *State v. Green*, 187 N.C. 466, 122 S.E. 178 (1924); *State v. McMullin*, 23 N.C. App. 90, 208 S.E. 2d 228 (1974); *State v. Wooten*, 20 N.C. App. 499, 201 S.E. 2d 696 (1974); *State v. Norman*, 19 N.C. App. 299, 198 S.E. 2d 480

(1973). When there is a proper procedure in the trial court for a party to negate the possible prejudice of unresponsive statements by a witness, he is admonished to do so at trial rather than wait to seek his relief in this Court. This assignment of error is overruled.

The defendants have objected to the form of questions asked of Mrs. Rutherford. It suffices to say that the defendants have failed to show that the trial court abused its discretion in allowing the questions, as propounded, to be answered. *See generally* Stansbury, *supra*, § 31. We also find that the questions as phrased by plaintiff's counsel did not make an assumption that the starter coil was a necessary part of the unit.

Defendants assign as error the court's allowing plaintiff's expert to answer, over objection, the question whether a homeowner could reasonably assume, when changing filters in that unit, he would not come into close proximity with unshielded electrical wiring. Although perhaps technically objectionable as phrased, read in context with other testimony by the expert which was not the subject of objection, we are convinced that the answer was not prejudicial to the defendants. The trial court refused to allow the witness to respond on cross-examination to defendants' question whether the appearance of the capacitor "would tell anybody that that was an open, uninsulated electrical terminal". Not only was the question as phrased not within the witness' sphere of expertise, the error was not properly preserved by offering the witness' answer for the record. *See generally* Stansbury, supra, § 26.

[5] A professor of electrical engineering from North Carolina State University was allowed to testify, over objection, that it would not be necessary, for safety reasons, to cut off the power to the unit if the capacitor had been shielded properly or placed in a more remote location. The witness had personally inspected the unit at the Rutherford home. A similar question was before the Court in *Hassel v. Daniels*, 180 N.C. 37, 103 S.E. 897 (1920). There an expert machinist was allowed to testify that the machine was safe if plaintiff had stood on the box provided by the employer to oil the machine. The Court observed:

> "While to some extent in the form of an opinion, this testimony is really the statement of a fact, but whether the

one or the other, the witness having personal observation of conditions, and being qualified by opportunity, training, and experience to give an opinion that would aid the jury to a correct conclusion on the subject, the testimony was in our opinion properly received. [Citations omitted.]" 180 N.C. at 39, 103 S.E. at 898.

We find, for the reasons stated in *Hassel*, that the trial court properly permitted the witness to answer the question.

The defendants' assignment of error relating to the admission of the 1968 National Electric Code on the grounds of relevance is not well taken. The electrical standards apply to negligence of defendants in failing to correct the improper installation or warn of danger regardless of whether the original installation violated the Code. Defendants' assignment of error asserting that Mr. Bass should have been allowed to answer the question whether Bass Air Conditioning installed the rebuilt motor similarly misses the point of the trial court's ruling. The evidence was properly excluded because it was not within the personal knowledge of the witness. He had already testified that his records did not indicate that his company had installed the motor and that his knowledge of what was done was based only on those records.

[6] Defendants contend that the decedent was guilty of contributory negligence as a matter of law and that it was error for the trial court to deny defendants' motion for a directed verdict at the end of the plaintiff's evidence and at the end of all the evidence. We reaffirm the specific application of the rule of ordinary care; *i.e.*, that a person, upon seeing an electrical wire known to be dangerous, has a duty to avoid contact with it. *See Alford v. Washington*, 244 N.C. 132, 92 S.E. 2d 788 (1956); *Mintz v. Murphy*, 235 N.C. 304, 69 S.E. 2d 849 (1952). However, this Court, considering the inferences from the evidence at trial in the light most favorable to the plaintiff, cannot conclude as a matter of law that (1) deceased knew or in the exercise of reasonable care should have known of the dangerous condition of the capacitor and (2) he failed to exercise due care to avoid contact with the starter coil when he attempted to change filters in the unit on 31 August 1970.

We note that the trial court's instructions on the standard of care arising out of the contract for the servicing of plaintiff's air conditioning unit were entirely proper. The existence of that contract creates a duty on the part of the serviceman toward plaintiff's intestate. The standard of care remains that of the ordinary reasonably prudent man in an action in tort. *Ports Authority v. Roofing Co.*, 294 N.C. 73, 240 S.E. 2d 345 (1978); *Peele v. Hartsell*, 258 N.C. 680, 129 S.E. 2d 97 (1963); *Pinnex v. Toomey*, 242 N.C. 358, 87 S.E. 2d 893 (1955). The trial court explained to the jury that a contract arose between the parties when defendants accepted the service call. Furthermore, the instructions adequately distinguished the installation contract and the service contract. This assignment of error is overruled.

Defendants' assignment of error No. 20 is directed to another portion of the charge. It is without merit and, in our opinion, further discussion is not necessary.

### Plaintiff's Cross-Appeal

[7] The trial court granted defendants' motion for partial summary judgment on those allegations by plaintiff relating to negligent installation of the air conditioning unit and breach of warranty arising upon that installation. The motion for summary judgment was based on defendants' assertion that G.S. 1-52 barred any claim relating to the installation which occurred 20 July 1965. Plaintiff's complaint was filed 15 August 1972.

G.S. 1-52(1) provides that an action "upon a contract, obligation or liability arising out of a contract, express or implied" must be brought within three years of the accrual of the cause of action. Similarly, G.S. 1-52(5) requires that an action for injury to the person be brought within three years. G.S. 1-15(b), effective 21 July 1971 and enacted to remedy the harsh results of prior law, is not applicable to this case.

> " '[I]t is well settled that the time within which an action may be brought may be enlarged as to pending causes *not barred*, and that such legislation [extending the time] is not deemed retroactive and does not impair vested rights' (Emphasis added)." *Ports Authority v. Roofing Co.*, 294 N.C. at 84, 240 S.E. 2d at 352 (1978) (quoting, *McCrater v. Engineering Corp.*, 248 N.C. 707, 710, 104 S.E. 2d 858, 861 (1958); *see also Wilkes County v. Forester*, 204 N.C. 163, 167 S.E. 691 (1933).

Cases prior to the enactment of the above statute consistently hold that "[t]he cause of action accrues when the wrong is complete, even though the injured party did not then know the wrong had been committed." *Wilson v. Development Co.*, 276 N.C. 198, 214, 171 S.E. 2d 873, 884 (1970); *see also Jewell v. Price*, 264 N.C. 459, 142 S.E. 2d 1 (1965). Plaintiff's cause of action, therefore, was barred on 20 July 1968, and G.S. 1-15(b) may not revive that action. The trial court properly granted partial summary judgment dismissing those allegations relating to negligent installation.

Plaintiff's other assignments of error on cross-appeal have been abandoned. Rule 28, North Carolina Rules of Appellate Procedure.

Affirmed.

Judges MITCHELL and ERWIN concur.