STATE OF NORTH CAROLINA v. ROBERT LEE ROGERS, III

No. 571A87

(Filed 4 January 1989)

**1. Criminal Law § 102.6— murder—prosecutor's comments to jury—no error**

The trial court did not err in a prosecution for first degree murder by overruling defendant's objections to comments made by the prosecutor in his closing argument where the prosecutor's opinions that Transylvania County should be decent, safe and law-abiding, that drug abuse is bad, that young people should be warned about drug abuse, and that a person's home is his castle are opinions which are widely held; arguments that 95% of murderers would be free if intoxication was a defense and that politicians have talked about building a new stretch of road were related to the facts that voluntary intoxication is generally not a defense to a crime and that it is difficult to travel on snow-covered mountain roads; speculation that the defense of intoxication was an afterthought was a legitimate inference arising from the evidence that defendant was not as drunk as he claimed to be; and the prosecutor's statements exhorting the jury not to return a verdict of less than first degree murder were typical prosecutorial rhetoric.

**2. Criminal Law § 50.1— murder—expert estimate of defendant's blood alcohol level—properly excluded**

The trial court did not err in a first degree murder prosecution by sustaining the State's objection to the testimony of defendant's medical expert on his estimate of defendant's blood alcohol content at the time of the shootings. The data upon which the witness's opinion was based was inadequate for him to form an opinion; moreover, the exclusion could not have prejudiced defendant, even if it was error, because ample evidence was introduced showing defendant's very heavy consumption of alcohol that day and Dr. Moore was allowed to testify extensively about the effect of alcohol on the brain.

**3. Criminal Law § 43.4— murder—photographs of bodies—admissible**

The trial court did not err in a prosecution for first degree murder by admitting nine photographs of the victims' bodies. The number of photographs was not excessive and the photographs were not gory or gruesome.

**4. Homicide § 18.1— murder—evidence of premeditation and deliberation sufficient**

The trial court did not err by denying defendant's motion to dismiss both charges of first degree murder where a reasonable juror could have found premeditation and deliberation from the evidence that, after being teased by the victims about his drug use, defendant returned to his car, became depressed about his drug problem, retrieved his gun from under the back seat and his ammunition from between the front seats, loaded the gun, walked back to the house, shot the victims until his gun was empty, then reloaded and shot one of the victims again. The jury could infer malice although defendant's mental and physical faculties were impaired from the use of alcohol, and the court declined to reconsider the rule that malice may be inferred in a homicide case from the unlawful killing with a deadly weapon.

**5. Homicide § 30.2— murder—refusal to submit voluntary manslaughter based on provocative words—no error**

The trial court did not err in a first degree murder prosecution by refusing to submit voluntary manslaughter to the jury based on the victims' teasing of defendant about his drug problem. Mere words, however abusive, are not sufficient provocation to reduce second-degree murder to manslaughter.

**6. Constitutional Law § 78— two murders—consecutive life sentences—no error**

The trial court did not violate the constitutional mandate against cruel and unusual punishment by sentencing defendant to consecutive life sentences for two counts of first degree murder. N.C.G.S. § 14-17.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from judgments imposing life sentences entered by *Rousseau, J.,* at the 31 August 1987 Session of Superior Court, TRANSYLVANIA County. Heard in the Supreme Court 14 November 1988.

The defendant was tried on two counts of first degree murder. The evidence tended to show that he was a drug addict. As a

child, he had had a learning disability and a violent disposition. He began using illegal drugs at age 13. He later married a drug addict. He and his wife spent at least $15,000 a year on illegal drugs, mostly cocaine and dilaudid. He also drank excessive amounts of alcoholic beverages.

On Saturday, 4 April 1987, when he was 31 years old, the defendant spent his day drinking and driving various places. His wife took injections of dilaudid. When it began to wear off, the defendant decided to procure some cocaine. He called Charles Allen Hollingsworth, from whom he had purchased cocaine several times before. Hollingsworth agreed to sell him some on this occasion. The defendant left his home in Asheville to go to Hollingsworth's home in Brevard. By the time he left to drive to Brevard, he had drunk between 12 and 22 beers, four "mini-bottles" of whiskey and perhaps some tequila. He was "staggering drunk" with slurred speech. He drank more beer on the way to Brevard.

He had a .22 caliber handgun under the back seat. He often carried this gun when he went to buy drugs. It was not loaded; he kept the ammunition in the bin between the front seats.

The defendant arrived at Hollingsworth's house at 9:00 p.m. Maurice Olin Higginbothan, age 17, was present with Hollingsworth. The defendant had not met Higginbothan before this time. The defendant bought a gram of cocaine from Hollingsworth for $100. Hollingsworth and Higginbothan teased him about the lengths to which users go to get drugs. When the defendant returned to his car, he was "feeling really bad" about the way he and his wife were destroying their lives with drugs. He then "just caved in inside." He became numb and stiff. He retrieved his gun from under the seat, picked up a handful of shells, loaded the gun and walked back to Hollingsworth's house. He walked in the door, shot Hollingsworth in the head, then shot Higginbothan until the gun was empty. He then reloaded and shot Hollingsworth again.

The defendant then walked out of the house, got in the car and drove to Asheville. He did not take his $100 or take any other money, even though Hollingsworth had $3,457.81 in cash on his person and Higginbothan had $339.35. Nor did the defendant take any more drugs with him, even though there were varying amounts of several different drugs in various places in the room.

After the defendant returned to Asheville, he and his wife stayed up all night consuming the cocaine and drinking beer. He did not tell anyone what he had done. The next day, Sunday, he poured acid into the barrel of the pistol. He saw nothing about the murders on the news and began to think it might have been a bad dream. However, he read about them in the newspaper on Monday afternoon. When he came home from work, he told his wife that he had committed the murders. She was afraid he would shoot himself, so they both drove to his parents' house in Lenoir. He told them what he had done. They called a lawyer, then the defendant, his wife and his parents drove back to Asheville. The defendant surrendered to the sheriff's department and gave a full confession.

While in jail, the defendant told another inmate that "a deal went sour" and he had meant to kill Hollingsworth, but Higginbothan had been in the wrong place at the wrong time.

The jury found the defendant guilty on both counts of first degree murder. He received two consecutive life sentences.

*Lacy H. Thornburg, Attorney General, by Charles M. Hensey, Special Deputy Attorney General, for the State.*

*Leonard, Biggers & Knight, by T. Karlton Knight, for the defendant appellant.*

WEBB, Justice.

[1] In his first assignment of error, the defendant contends that the trial court erred in overruling the defendant's objections to numerous comments the prosecutor made in his closing argument. The defendant argues that by the following comments, the prosecutor injected his personal beliefs into the trial:

First of all, the very basic notion that Transylvania County should be a clean and a decent, and a safe and a law abiding—

. . . .

Let me tell you right off the bat, that I do not believe in, and I do not countenance this drug business, possession . . . of drugs, or use of drugs, by anyone—

. . . .

Especially when that murder has been directed against young citizens of this county. And, when I think about young citizens, . . . I found myself wishing that we had a courtroom big enough . . . to accommodate every young person in this county . . . especially our high school children. . . .

. . . .

Think how much more of [premeditation and deliberation] are required for me to take this pistol right here, and to go into a house where two people are, into the—one of those people being the owner of that house now, and the notion in law is that that house, regardless of how humble it is, is supposed to be that man's castle where he—

The defendant argues that by the following comments the prosecutor traveled outside the record:

Generally, voluntary intoxication is not a legal excuse for a crime. If it was, that is, if voluntary intoxication either on drugs or liquor or beer, whatever, was an excuse for crime, ninety-five percent of the murderers in the State of North Carolina would be put back on the street—

. . . .

[A]nd, what's the one thing, ladies and gentlemen, that the politicians over here in Transylvania County talk about the most when election time comes? They talk about the need to build that connector road out there.

(Here the prosecutor's point was that the stretch of road the defendant was driving on that night was difficult to navigate in the snow, which is why people want the new road.)

. . . .

Was Mr. Rogers even intoxicated to the extent that he now contends that he was? Is this defense of intoxication an afterthought? Is this a situation where Mr. Rogers comes in and admits to certain acts to which there is no defense? And, then this intoxication is somehow encouraged and nourished along—

Thirdly, the defendant complains that by the following comments the prosecutor improperly asked the jury not to compromise its verdict:

> [A]nd we don't want you to compromise, or we don't want you folks to, in effect, go back there and strike a plea bargain—
>
> . . . .
>
> But, I say this, members of the jury, in a case like this where you've heard the kind of evidence that you've heard, and with the strength of this evidence that you've heard, I would must [sic] rather you, as jurors, rather than go back there and call this case second degree murder, . . . I'd just rather see you turn him loose and put him back—

After examining each of these comments, we conclude it was not error for the court to allow them. N.C.G.S. § 15A-1230(a) provides:

> During a closing argument to the jury an attorney may not become abusive, inject his personal experiences, express his personal belief as to the truth or falsity of the evidence or as to the guilt or innocence of the defendant, or make arguments on the basis of matters outside the record except for matters concerning which the court may take judicial notice. An attorney may, however, on the basis of his analysis of the evidence, argue any position or conclusion with respect to a matter in issue.

"Argument of counsel must be left largely to the control and discretion of the trial judge, and counsel must be allowed wide latitude in their arguments which are warranted by the evidence and are not calculated to mislead or prejudice the jury." *State v. Riddle*, 311 N.C. 734, 738, 319 S.E. 2d 250, 253 (1984).

In the first four comments of which the defendant complains, the prosecutor did express his opinions. However, these opinions, namely that Transylvania County should be decent, safe and law-abiding, that drug abuse is bad, that young people should be warned about drug abuse, and that a person's home is his castle are opinions which are widely held. It was not error to allow the prosecuting attorney to use them as premises for his argument.

We hold it was not error for the district attorney to make the arguments the defendant argues were outside the record. His statement that 95% of the murderers would be free if intoxication was a defense was obvious hyperbole related to the fact that voluntary intoxication is generally not a defense to a crime. His statement that politicians have talked about building a new stretch of road was related to the well-known fact it is difficult to travel on mountain roads that are covered with snow. These were not improper arguments.

The prosecutor's comment speculating that the defense of intoxication was an afterthought was a legitimate inference arising out of the evidence that the defendant was not actually as drunk as he claimed to be. The prosecutor's statements exhorting the jury not to return a verdict of less than first degree murder are typical prosecutorial rhetoric. It was not error for the trial court to allow these comments. This assignment of error is overruled.

[2] The defendant next contends the trial court erred in sustaining the State's objection to the testimony of the defendant's medical expert on his estimate as to the defendant's blood alcohol content at the time of the shootings. Dr. Dennis Moore, the medical expert, testified extensively about the defendant's history of chemical dependency. He then testified as to the amount of alcohol the defendant had consumed on the day before and the day of the shootings. He was then asked to give his estimate of the defendant's blood alcohol content at the time of the shootings. The State objected. After a voir dire hearing, the trial court sustained the objection on the ground that the witness was "guessing at too many things." The defendant contends that this was error. We disagree.

Opinion testimony based on inadequate data should be excluded. *Donavant v. Hudspeth*, 318 N.C. 1, 347 S.E. 2d 797 (1986); *Service Co. v. Sales Co.*, 259 N.C. 400, 131 S.E. 2d 9 (1963); *Rutherford v. Air Conditioning Co., Inc.*, 38 N.C. App. 630, 248 S.E. 2d 887 (1978), *cert. denied*, 296 N.C. 586, 254 S.E. 2d 34 (1979); 1 Brandis on North Carolina Evidence § 136 (1982).

In the present case, Dr. Moore admitted that he did not know when the defendant last drank alcohol on that day, and did not know the defendant's rate of metabolism. His opinion was based principally upon how sober one would have to be to be able to

drive. The data upon which the witness' opinion was based was inadequate for him to form an opinion. In the words of Judge Rousseau it was "just a guess." It was properly excluded.

Even if the exclusion were error, it could not have prejudiced the defendant; ample evidence was introduced showing the defendant's very heavy consumption of alcohol that day, and Dr. Moore was allowed to testify extensively about the effect of alcohol on the brain. Finally, Dr. Moore testified as to how a hypothetical 170-pound person would react to consumption of twelve to eighteen beers and four mini-bottles of whiskey, and what his blood alcohol content might be. Clearly, the defendant was allowed to present to the jury, at least in substance, the evidence he wanted to present. This assignment of error is overruled.

[3] The defendant next assigns error to the trial court's admission, over the defendant's objection, of nine photographs of the victims' bodies. The defendant argues that the photographs were repetitive, and that their relevancy was outweighed by their potential to inflame the passions of the jury. We disagree.

Under N.C.G.S. § 8-97, photographs may be introduced as substantive evidence or for the purpose of illustrating the testimony of a witness. Photographs of homicide victims may be introduced even if they are gory, gruesome, horrible, or revolting, so long as an excessive number of photographs are not used solely to arouse the passions of the jury. *State v. Murphy*, 321 N.C. 738, 365 S.E. 2d 615 (1988).

Of the nine photographs at issue in the present case, one depicts Hollingsworth's body as found at the crime scene, and two are autopsy photographs showing Hollingsworth's different wounds. One photograph depicts Higginbothan's body as discovered at the crime scene and four are autopsy photographs showing Higginbothan's various wounds. One photograph of the crime scene includes Higginbothan's body and part of Hollingsworth's body. We do not find this number to be excessive, especially since each autopsy photograph shows a different wound, and since the photographs are not, in our opinion, gory or gruesome. This assignment of error is overruled.

[4] The defendant next contends the trial court erred in denying his motion to dismiss both charges of first degree murder. He argues first that the evidence was insufficient for a jury to find the elements of premeditation and deliberation.

> Premeditation means that defendant formed the specific intent to kill the victim for some period of time, however short, before the actual killing. Deliberation means that the intent to kill was formed while defendant was in a cool state of blood and not under the influence of a violent passion suddenly aroused by sufficient provocation.

*State v. Misenheimer*, 304 N.C. 108, 113, 282 S.E. 2d 791, 795 (1981).

> The term "cool state of blood" does not mean that the defendant must be calm or tranquil or display the absence of emotion; rather, the defendant's anger or emotion must not have been such as to disturb the defendant's faculties and reason.

*State v. Tysor*, 307 N.C. 679, 682-83, 300 S.E. 2d 366, 368 (1983).

We believe that a reasonable juror could have found premeditation and deliberation from the evidence that, after the defendant was teased by Hollingsworth and Higginbothan about his drug use, he returned to his car, became depressed about his drug problem, then retrieved his gun from under the back seat, and his ammunition from between the front seats, loaded the gun, walked back to the house, shot the victims until his gun was empty, then reloaded and shot Hollingsworth again. This evidence shows the defendant planned the murders and deliberately executed the plan. The jury could infer premeditation and deliberation from it.

The defendant also contends the evidence shows that his mental and physical faculties were impaired to such an extent from the use of alcohol that the jury could not infer malice. The jury could infer there was malice although the defendant's mental and physical faculties were impaired from the use of alcohol. *State v. Bunn*, 283 N.C. 444, 196 S.E. 2d 777 (1973). The defendant also asks that we reconsider the rule that malice may be inferred in a homicide case from the unlawful killing with a deadly weap-

on. *State v. Bondurant*, 309 N.C. 674, 309 S.E. 2d 170 (1983). This we decline to do. This assignment of error is overruled.

**[5]** The defendant next contends the trial court erred in refusing to submit to the jury the offense of voluntary manslaughter.

> The trial court is required to charge on a lesser offense only when there is evidence to support a verdict finding the defendant guilty of such lesser offense. . . . "However, when all the evidence tends to show that defendant committed the crime charged and did not commit a lesser included offense, the court is correct in refusing to charge on the lesser included offense."

*State v. Hickey*, 317 N.C. 457, 470, 346 S.E. 2d 646, 655 (1986) (citation omitted).

Voluntary manslaughter is the unlawful killing of a human being without malice, premeditation or deliberation. *State v. Fleming*, 296 N.C. 559, 251 S.E. 2d 430 (1979). The difference between second degree murder and manslaughter is that malice is present in the former and not in the latter. *State v. Wilkerson*, 295 N.C. 559, 247 S.E. 2d 905 (1978). Malice is that condition of the mind which prompts one person to take the life of another intentionally without just cause, excuse or justification. *State v. Fleming*, 296 N.C. 559, 251 S.E. 2d 430. The defendant argues that the victims' teasing of the defendant about his drug problem amounts to such "just cause, excuse or justification." We disagree. "Mere words however abusive are not sufficient provocation to reduce second-degree murder to manslaughter. Legal provocation must be under circumstances amounting to an assault or threatened assault." *State v. Montague*, 298 N.C. 752, 757, 259 S.E. 2d 899, 903 (1979). Since the victims' teasing cannot amount to sufficient justification to negate malice, there was no evidence to support submission to the jury of the crime of voluntary manslaughter. Therefore, the trial court correctly refused to submit that offense to the jury. This assignment of error is overruled.

**[6]** The defendant lastly contends that the trial court violated the constitutional prohibition against cruel and unusual punishment when it sentenced him to consecutive life sentences. We disagree. The defendant was convicted of two counts of first degree murder. N.C.G.S. § 14-17 provides that the minimum punishment

for such a crime is life imprisonment. We have held that consecutive life sentences do not constitute cruel and unusual punishment and are not unconstitutional. *See State v. Ysaguire*, 309 N.C. 780, 309 S.E. 2d 436 (1983). We are bound by *Ysaguire* to overrule this assignment of error.

In the trial we find

No error.