STATE OF NORTH CAROLINA v. LONNELL McCONNAUGHEY

No. 8327SC219

(Filed 17 January 1984)

**1. Homicide § 21.7— second degree murder—sufficiency of evidence**

The evidence was sufficient to withstand defendant's motion to dismiss a charge of second degree murder where one witness testified that defendant pointed and fired his gun in the direction of the victim when the two were three or four feet apart, before they started wrestling, and where there was evidence that defendant may have provoked the assault by the victim, thus removing any claim of self-defense.

**2. Homicide § 30.3— failure to instruct on voluntary and involuntary manslaughter—error**

The trial judge erred in failing to instruct on voluntary manslaughter and involuntary manslaughter where defendant, in response to a request for payment by the owner of a drinking establishment, pulled out a gun and a fight ensued; where defendant and several witnesses testified that defendant did nothing to provoke the fight; that defendant neither pulled the gun out in a threatening manner nor used threatening or provoking language; that defendant testified that he did not know why the owner/victim charged toward him; where testimony from several witnesses indicated that the gun discharged during the time that defendant and the victim were wrestling; and where there was evidence tending to show that the victim was a bigger, stronger man than defendant and that the victim had a blood alcohol level of 0.14%.

APPEAL by defendant from *Saunders, Judge.* Judgment entered 5 November 1982 in Superior Court, GASTON County. Heard in the Court of Appeals 26 October 1983.

On 13 September 1982, defendant was indicted for second degree murder in connection with the death of Joe Benny Hogue. At trial, the State and the defense presented conflicting evidence. The details of the conflicts and inconsistencies in the evidence will be discussed as necessary below. The evidence tends to show basically the following:

On 3 June 1982, defendant and several friends went to a "liquor house" owned and operated by Joe Benny Hogue, the deceased victim. Hogue was not then present but the house was being operated by another man, Tony Giles, who was Hogue's neighbor. Defendant had approximately $130.00 in cash with him. He put $40.00 in his front jeans pocket and gave his wallet, containing the rest of the money, to one of his friends to hold.

Defendant bought his friends some liquor from Giles and began playing cards. Hogue came in a short while later. Hogue had been drinking and a *post mortem* medical report showed his blood alcohol to be 0.14%.

Defendant lost some money at cards and quit playing. He ordered a round of beer for himself and his friends. The beer was delivered by Giles while Hogue was in another room. When Hogue returned, he asked who was going to pay for the beer that defendant ordered. Defendant, who was seated at the time, indicated that he had Hogue's pay, stood up and reached into the front pocket of his jeans for the money and pulled out a gun. Hogue then charged at defendant and the two of them wrestled around the room for about a minute. Sometime during the scuffle the gun discharged, wounding Hogue. Hogue and defendant fell on the floor with Hogue on top of defendant. They stopped wrestling and the gun was taken from them. Only after the wrestling had stopped did anyone realize that Hogue had been shot. When defendant saw this, he became upset and pleaded with Hogue not to die, stating that he had not meant to shoot him. Hogue bled to death within a few minutes.

Defendant and Hogue had known each other for most of defendant's life. There was testimony that there had been no previous disagreement between them and that they were in fact friends.

At the close of the State's evidence and again at the close of all evidence, defendant moved for dismissal of the second degree murder charge. The motion was denied both times. Counsel for defendant requested a jury instruction on manslaughter, but the request was denied. The jury returned a verdict of guilty on the charge of second degree murder and defendant was sentenced to fifteen years imprisonment. Motions to set the verdict aside and to declare a mistrial were denied. Defendant appealed.

*Attorney General Edmisten, by Assistant Attorney General Alfred N. Salley, for the State.*

*Assistant Public Defender Rebecca K. Killian for defendant appellant.*

EAGLES, Judge.

I

By his first assignment of error, defendant contends that the trial court erred in denying his motion to dismiss the charge of second degree murder. Defendant contends that the evidence does not establish an intent to kill from which the jury could infer the malice necessary to support the charge.

In a motion to dismiss, the question presented is whether the evidence is legally sufficient to support a verdict of guilty on the offense charged, thereby warranting submission of the charge to the jury. *State v. Cooper,* 275 N.C. 283, 167 S.E. 2d 266 (1969). In order to withstand a motion to dismiss, the State's evidence as to each element of the offense charged must be substantial. *State v. Irwin,* 304 N.C. 93, 282 S.E. 2d 439 (1981); *State v. Smith,* 40 N.C. App. 72, 252 S.E. 2d 535 (1979). Substantial evidence in this context means more than a scintilla. *Id.; see State v. Weinstein,* 224 N.C. 645, 31 S.E. 2d 920, 156 A.L.R. 625 (1944) *cert. denied sub nom. Weinstein v. State,* 324 U.S. 849 (1945) (same test in motion for nonsuit). The evidence, considered in the light most favorable to the State and indulging every inference in favor of the State, must be such that a jury could reasonably find the essential elements of the crime charged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, *reh. denied,* 444 U.S. 890 (1979); *State v. Jones,* 303 N.C. 500, 279 S.E. 2d 835 (1981).

Second degree murder is the unlawful killing of a person with malice but without premeditation and deliberation. *State v. Fleming,* 296 N.C. 559, 251 S.E. 2d 430 (1979); *State v. Foust,* 258 N.C. 453, 128 S.E. 2d 889 (1963). Malice may be inferred from evidence tending to show an intentional taking of human life without justification or excuse. *State v. Fleming, supra.* When a person intentionally fires a gun in the direction of another person, thereby causing the death of the other person, the killing is intentional. *State v. Woods,* 278 N.C. 210, 179 S.E. 2d 358 (1971).

[1]   In the present case, there is competent eyewitness testimony from State's witness John Ross that defendant pointed and fired his gun in the direction of Hogue when the two were three or four feet apart, before they started wrestling. There is also evidence that defendant may have provoked the assault by

Hogue, thus removing any claim of self-defense. This evidence is legally sufficient to establish the necessary malice or intent to kill for a charge of second degree murder. *See State v. Woods, supra.* (Evidence that defendant pointed rifle at victim but "aimed to miss" permits inference of malice. New trial awarded on other grounds.) Construed in the light most favorable to the State, this evidence is sufficient to withstand defendant's motion to dismiss. The trial court's denial of the motion was therefore not error and defendant's first assignment is overruled.

## II

[2] Defendant's second and third assignments of error concern the trial court's failure to instruct the jury on manslaughter in spite of defendant's counsel's request for the instructions. Defendant brings these assignments of error forward and addresses them separately in his brief. However, because of the similarity of the issue presented by each, we will consider them together. Defendant contends that the evidence at trial required the judge to submit to the jury the charges of voluntary manslaughter and involuntary manslaughter and to instruct the jury accordingly. We agree.

It is well established in North Carolina that a judge presiding over a jury trial must instruct the jury as to a lesser included offense of the crime charged where there is evidence from which the jury could reasonably conclude that the defendant committed the lesser included offense. *State v. Wallace,* 309 N.C. 141, 305 S.E. 2d 548 (1983); *State v. Redfern,* 291 N.C. 319, 230 S.E. 2d 152 (1976). The judge is required to submit to the jury all lesser included offenses of which there is some evidence in the record. *State v. Palmer,* 293 N.C. 633, 239 S.E. 2d 406 (1977).

Voluntary manslaughter is the unlawful killing of a human being without malice and without premeditation and deliberation. *State v. Fleming, supra.* A person who kills another is guilty of manslaughter and not murder if the killing was committed under the influence of passion or in a state of heated blood brought on by adequate provocation. *State v. Wynn,* 278 N.C. 513, 180 S.E. 2d 135 (1971). An actual or threatened assault on the defendant constitutes sufficient provocation to induce the heated state necessary to reduce a killing from murder to manslaughter. *State v. Watson,* 287 N.C. 147, 214 S.E. 2d 85 (1975).

A closely related concept is that of imperfect self-defense. A person who kills another is not guilty of murder if the killing was an act of self-defense. *State v. Deck,* 285 N.C. 209, 203 S.E. 2d 830 (1974). The right to kill another in self-defense arises when the killing is or reasonably appears to be necessary in order to prevent death or great bodily harm. *Id.* Where a person who kills another in self-defense uses more force than is necessary, his right of self-defense becomes imperfect and he is guilty of voluntary manslaughter. *State v. Norris,* 303 N.C. 526, 279 S.E. 2d 570 (1981); *State v. Burden,* 36 N.C. App. 332, 244 S.E. 2d 204, *rev. denied,* 295 N.C. 468, 246 S.E. 2d 216 (1978).

Involuntary manslaughter has been defined as the unlawful and unintentional killing of a human being, without malice and without premeditation and deliberation, proximately caused by (1) an unlawful act not amounting to a felony nor normally dangerous to human life, or (2) a culpably negligent act or omission. *State v. Fleming; State v. Redfern,* both *supra.* The killing of a human being proximately resulting from the wanton or reckless handling of a firearm but without the intent to discharge the firearm is involuntary manslaughter. *State v. Wallace, supra; State v. Moore,* 275 N.C. 198, 166 S.E. 2d 652 (1969). Careless handling of a loaded firearm has been held to constitute culpable negligence. *State v. Wallace, supra.*

With these concepts in mind, we turn to the instant case. There we find evidence from which a jury could reasonably have concluded that the killing of Hogue was either voluntary or involuntary manslaughter instead of second degree murder. Defendant and several witnesses testified that defendant did nothing to provoke the fight; that defendant neither pulled the gun out in a threatening manner nor used threatening or provoking language. Defendant testified that he did not know why Hogue charged toward him. Testimony from several witnesses indicates that the gun discharged during the time that defendant and Hogue were wrestling. There is evidence tending to show that Hogue was a bigger, stronger man than defendant and could have beaten defendant in a fight. There is evidence that Hogue had been drinking and expert testimony that he had a blood alcohol level of 0.14%.

Assuming that defendant pulled the trigger and that he meant to kill or injure Hogue, there is sufficient evidence for a jury to find that defendant, having been assaulted by Hogue, was acting either in self-defense or under the influence of passion or in a heated state of blood. A verdict of guilty of voluntary manslaughter was possible and the jury should have been so instructed.

That defendant and Hogue wrestled over the gun is not in dispute. There is conflicting testimony as to who actually had control of the gun during the fight. Several witnesses testified that Hogue grabbed defendant's hands and there is testimony that the gun discharged during the fight and that, after the fight, the gun was taken from both defendant and Hogue or from Hogue alone.

Our Supreme Court has held that submission to the jury of a charge of involuntary manslaughter is prejudicial error where there is no evidence that the killing was accidental and defendant is asserting self-defense with respect to greater degrees of homicide. *State v. Ray*, 299 N.C. 151, 261 S.E. 2d 789 (1980). In that case and in subsequent cases, *e.g., State v. Cason*, 51 N.C. App. 144, 275 S.E. 2d 221 (1981); *State v. Brooks*, 46 N.C. App. 833, 266 S.E. 2d 3 (1980), the evidence shows that the defendants deliberately engaged in an act likely to result in death or serious injury. Other than the defendants' assertions that they had not meant to kill, there was no evidence that the killings were accidental. In these situations our courts have held that the resulting homicide was at least voluntary manslaughter and that submission of a charge of involuntary manslaughter was error. *Id.*

There is evidence here, however, tending to show that the gun could have discharged accidentally and that defendant did not intend to kill or injure Hogue. Here, it would have been possible to find that defendant acted carelessly and recklessly in his handling of the gun and that his actions proximately resulted in Hogue's death. The jury could have found defendant guilty of involuntary manslaughter and should have been given appropriate instructions. *State v. Wallace, supra.*

For the above reasons, we find merit in defendant's second and third assignments of error and accordingly award defendant a

New trial.

Judges WEBB and PHILLIPS concur.