## STATE v. CINTRON

[132 N.C. App. 605 (1999)]

STATE OF NORTH CAROLINA v. CHARLES CARLO CINTRON

No. COA98-634

(Filed 6 April 1999)

**1. Homicide— first-degree murder—sufficiency of evidence of corpus delicti**

The trial court correctly denied defendant's motion to dismiss a charge of first-degree murder where there was enough evidence from which any rational trier of fact could find that the victim's death was not an accident and was caused by defendant.

**2. Homicide— first-degree murder—premeditation and deliberation—sufficiency of evidence**

The trial court properly denied defendant's motion to dismiss a charge of first-degree murder where defendant alleged insufficient evidence of premeditation and deliberation but the victim was killed with defendant's 30.06 rifle, which was seen leaning against a couch on which defendant was seated just prior to the killing and which was normally kept in a bedroom closet; defendant made extensive efforts to conceal and dispose of the victim's body, including cleaning the apartment after the shooting; and the victim was shot in the face at close range with a 30.06 rifle.

**3. Homicide— first-degree murder—instruction on second-degree murder denied—error**

The trial court erred in a first-degree murder prosecution by not giving an instruction on second-degree murder where conflicting inferences can be drawn from the evidence on premeditation and deliberation.

Judge LEWIS dissenting.

Appeal by defendant from judgment filed 8 October 1997 by Judge Jerry Cash Martin in Guilford County Superior Court. Heard in the Court of Appeals 23 February 1999.

*Attorney General Michael F. Easley, by Assistant Attorney General Joan Herre Erwin, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Charlesena Elliott Walker, for defendant-appellant.*

GREENE, Judge.

Charles Carlo Cintron (Defendant) appeals from his jury conviction for the first-degree murder of Joel Anderson (Joel).[1]

The State's evidence at trial tended to show the following: On 5 February 1994, Defendant lived in Greensboro, North Carolina with his wife Niurka Cintron (Nikki) and their two children. Defendant was employed as a mechanic, and recently had obtained a 1983 Dodge Omni automobile. At approximately 12:30 a.m. on the morning of 5 February 1994, Defendant returned to his home with a white man he referred to as "Joel." The two men had been drinking, and continued drinking at Defendant's apartment. Nikki testified that she heard the two men arguing, but "couldn't hear what they were saying." She further testified that Joel stated that he "wanted to die." When Nikki went into the kitchen, she observed the men sitting in the living room; Defendant was sitting on a couch, and Joel was sitting in a lounge chair in the corner of the room. Nikki also observed that Defendant's 30.06 rifle was leaning against the couch and between the two men. The rifle normally was kept in the bedroom closet. Nikki then left the apartment to feed her cat, and while outside, heard a gunshot. She immediately returned to the apartment and saw Defendant standing in front of Joel with the rifle in Defendant's hand, and smelled the odor of gun smoke and burned flesh. Joel was still seated in the lounge chair in the corner of the room and had been shot in his right eye. Nikki testified that she wanted to call the police, but Defendant refused and informed her that she would "go down with him if [she] said anything." Defendant then had Nikki help him to hide the body in a shed behind their apartment, and to clean the apartment. She further testified, when shown a photograph of Joel Anderson, that he was the person in her apartment on the morning of 5 February 1994.

About two weeks later, Defendant decided to move his family to Denton, Maryland to stay with a friend. Due to the cold weather, Joel's body became frozen, and did not emit an odor. Defendant packed the dead body in the hatchback area of the Dodge Omni, in the spare tire well, and attached the entire car to the back of a U-Haul truck. Upon arriving in Maryland, both Defendant and Nikki continued driving the Dodge Omni with the dead body in the hatchback. Once the weather warmed, the dead body started to emit odoriferous fumes, and Defendant received several complaints from neighbors.

---

1. The indictment charged Defendant with killing Joel Anderson.

In June of 1994, Nikki decided to leave Defendant and take the children to Miami, her home. Defendant then moved in with a friend, Ben Crosden (Crosden), who owned a farm in Cordova, Maryland. The Crosden farm was cluttered with animals, farm equipment, stranded automobiles, and woods. In November of 1994, Defendant moved into his own apartment in Easton, Maryland, but left the Dodge Omni parked at the Crosden farm.

On 22 March 1996, Crosden was looking for a barrel to use in feeding his farm animals and discovered one approximately 500 yards from his house emitting a terrible odor. He placed the barrel on its side, but waited until the next day to explore its contents. The next day, he began emptying the barrel and discovered the remains of a human body. At first, Crosden thought the remains were those of Link Bornos, a man reported missing in the area and known by the Crosdens. Crosden then called the authorities, who seized the barrel and the remains and delivered them to the medical examiner's office. The police later searched the Crosden farm again, and recovered a note from the Dodge Omni written by Nikki to Defendant asking if "it" was still in the car. The police then spoke with Nikki, who eventually confessed to what she witnessed and the subsequent events.

The medical examiner collected the remains and determined the body was that of an approximately thirty-year-old Caucasian male. The examiner also determined the cause of death to be "blunt force head injuries . . . like somebody had pulverized the skull, with multiple blows, or . . . a car had run over the skull, or . . . a shotgun . . . rifle . . . or high-powered pistol wound to the head." Although there was "massive head trauma," the examiner noted that the "teeth were in fairly good shape." The medical examiner then requested and received Joel's dental records. These records were received from Joel's family, and bore Joel's name, address, date of birth, telephone number, and signature. Additionally, Joel's mother confirmed that her son had certain teeth extracted, and testified she had "[n]o doubt" the handwriting in the dental records was Joel's. The records labeled and sent as Joel's dental records, however, did not match the teeth of the remains because the records indicated that Joel had certain teeth extracted that were present in the reconstructed skull. Faced with this discrepancy, the examiner requested photographs of Joel and determined, from those photographs, that the body was Joel's, and that the dental records were "in error." The trial court overruled Defendant's objection to the examiner's opinion, offered at trial, that the dental records were "in error." The medical examiner further tes-

tified that it was unlikely that a victim could manipulate a 30.06 rifle as to place the weapon at his eye, and that most suicides caused by rifles occur "under [the] chin or in the middle of [the] forehead." The examiner added that the injuries observed from the remains were inconsistent with suicide because the injuries "would be a near contact wound, and . . . the whole eye would be disintegrated." It was conceded, however, that suicide by shooting yourself in the right eye with a 30.06 rifle "is possible, but highly unlikely." The evidence also revealed that two trinkets, which had been given to Joel by his niece and grandniece, were found with the skeletal remains.

At the conclusion of the State's evidence, Defendant moved to dismiss the case arguing there was insufficient evidence to prove he committed first-degree murder "because there was no evidence of premeditation [or] deliberation." Defendant commented, "all they have proven is second-degree murder at most." The court denied Defendant's motion to dismiss, determining "there [was] substantial evidence of each and every element of the offense of first-degree murder." Defendant did not present evidence in this case, and renewed his motion to dismiss at the close of all the evidence. This renewed motion also was denied.

At the charge conference, the trial court proposed only to submit the question and instruct the jury on whether Defendant was "guilty of the first-degree murder of Joel Anderson, or not guilty." Defendant objected to the court's proposed instructions on first-degree murder and "request[ed] instruction on second-degree murder and lesser-included offenses." Defendant also requested other instructions, including a special instruction on suicide. In response to Defendant's request for the submission of lesser-included offenses of first-degree murder, the trial court noted, "In reviewing this evidence, the Court is of the view that the evidence is positive as to each element of the offense of first-degree murder, there is no conflicting evidence. And the Court does continue to deny the request for an instruction on the lesser-included offense."

The court submitted only first-degree murder to the jury, and it returned a verdict of guilty. Defendant was sentenced to life imprisonment.

The dispositive issues are: (I) whether there was substantial evidence of first-degree murder; and if so, (II) whether there was conflicting evidence regarding the premeditation and deliberation ele-

ments of first-degree murder, thus entitling Defendant to a jury instruction on second-degree murder.

## I

## First-Degree Murder

"First degree murder is the unlawful killing of a human being with malice, premeditation and deliberation." *State v. Misenheimer*, 304 N.C. 108, 113, 282 S.E.2d 791, 795 (1981). "Malice," which can be express or implied, is not necessarily "hatred or ill will," but rather "is an intentional taking of the life of another without just cause, excuse or justification." *State v. Robbins*, 309 N.C. 771, 775, 309 S.E.2d 188, 190 (1983). "Premeditation" occurs when the defendant forms the specific intent to kill some period of time, however short, before the actual killing. *State v. Weathers*, 339 N.C. 441, 451, 451 S.E.2d 266, 271-72 (1994). "Deliberation" is when the intent to kill is formed while the defendant is in a cool state of blood rather than under the influence of a violent passion suddenly aroused by sufficient provocation. *Id.*

Defendant contends his motion to dismiss should have been granted because there was not substantial evidence to show (A) that Defendant killed Joel, or if so, (B) that he did so with premeditation and deliberation. We disagree.[2]

"Substantial evidence is evidence from which any rational trier of fact could find the fact to be proved beyond a reasonable doubt." *State v. Sumpter*, 318 N.C. 102, 108, 347 S.E.2d 396, 399 (1986).

## A

## *Corpus Delicti*

[1] In a criminal homicide case, the State has the burden of proving *corpus delicti*, or the body of the transgression, with competent evidence. *State v. Cade*, 215 N.C. 393, 395, 2 S.E.2d 7, 9 (1939). To establish *corpus delicti*, (1) there must be a corpse, or circumstantial evidence so strong and cogent that there can be no doubt of the death; and (2) criminal agency must be shown. *State v. Dawson*, 278 N.C. 351, 358, 180 S.E.2d 140, 145 (1971). "The independent evidence must tend to point to some reason for the loss of life other than natural causes, suicide or accident." *Id.*

---

2. Defendant does not contend there is inadequate evidence of malice and we therefore do not address that issue.

**STATE v. CINTRON**

[132 N.C. App. 605 (1999)]

In this case, there is substantial evidence that the body found on the farm in Maryland was Joel's body, and that he was the person killed on 5 February 1994 in Defendant's apartment. The medical examiner testified, after examining photographs of Joel, that the body belonged to Joel because the teeth of the body matched the teeth of the person shown in the photograph, and that severe head injuries were the cause of death. Additionally, several trinkets were found with the body which matched those previously given to Joel by his relatives. Furthermore, Nikki testified, using the same photographs analyzed by the examiner, that Joel was the man who was killed in Defendant's apartment and that the cause of death was a shot to the head.

Even assuming the corpse found on the Maryland farm did not belong to Joel, there is circumstantial evidence so strong and cogent that there can be no doubt of the death of Joel. The man named Joel, who was killed in the Defendant's apartment, was identified later by Nikki as Joel Anderson, from a photograph of Joel Anderson.

Furthermore, there is substantial evidence that Joel's death came at the hands of Defendant and was not a result of "natural causes, suicide or accident," thus satisfying the criminal agency prong of the *corpus delicti* test. The testimony of Nikki confirms Joel was killed, and did not die from natural causes. Not only did she smell the gun smoke, but she also saw that Joel was shot through his right eye. Additionally, her testimony reveals that Defendant was standing over Joel directly after the shooting holding his rifle. Joel had not moved from the position in which Nikki last saw him. This is enough evidence from which any rational trier of fact could find Joel's death was not an accident[3] and was caused by Defendant. Finally, the testimony of the medical examiner regarding the "highly unlikely" possibility that Joel's death was a suicide was enough substantial evidence to satisfy this prong of the *corpus delicti* test. The trial court therefore correctly denied Defendant's motion to dismiss on this basis.

B

Premeditation and Deliberation

[2] Because premeditation and deliberation ordinarily are not susceptible of proof by direct evidence, they generally must be established by circumstantial evidence. *Weathers*, 339 N.C. at 451, 451

---

3. Defendant concedes in his brief to this Court that, "Based on the way the body was found, the pathologist determined this was a homicide instead of an accident."

S.E.2d at 271. Several factors are proper to consider in determining whether the killing was done with premeditation and deliberation, including: the killing was particularly cruel or brutal; preparations were made before the homicide for concealment of the crime; the position of the murder weapon prior to the killing; the nature and number of the victim's wounds; and the lack of provocation. *See* 2 Charles E. Torcia, *Wharton's Criminal Law* § 142 (15th ed. 1994); *State v. Mlo*, 335 N.C. 353, 369, 440 S.E.2d 98, 106, *cert. denied*, 512 U.S. 1224, 129 L. Ed. 2d 841 (1994); *see also State v. Thomas*, 332 N.C. 544, 556, 423 S.E.2d 75, 82 (1992), *disapproved of on other grounds by State v. Richmond*, 347 N.C. 412, 495 S.E.2d 677 (1998); 41 C.J.S. *Homicide* § 183, at 25-26 (1991).

In this case, there is substantial evidence of premeditation and deliberation: (1) Joel was killed with Defendant's 30.06 rifle, which normally was kept in the bedroom closet, but was seen leaning against the couch in which Defendant was seated just prior to the killing; (2) Defendant made extensive efforts to conceal and dispose of Joel's body, including the cleaning of the apartment after the shooting; and (3) the victim was shot in the face at close range with a 30.06 rifle. The trial court thus properly denied Defendant's motion to dismiss based on lack of premeditation and deliberation.

## II

## Second-Degree Murder

[3] Second-degree murder is the unlawful killing of a human being with malice but without premeditation and deliberation, and is a lesser-included offense of first-degree murder. *State v. Camacho*, 337 N.C. 224, 232-33, 446 S.E.2d 8, 12-13 (1994). A defendant is entitled to have any lesser-included offenses submitted to the jury, as possible alternative verdicts, *State v. Palmer*, 293 N.C. 633, 643-44, 239 S.E.2d 406, 413 (1977), unless the State's evidence is positive as to each element of the crime charged and there is no conflicting evidence or conflicting inferences from the evidence with respect to any element of the charged crime, *State v. Phipps*, 331 N.C. 427, 457-59, 418 S.E.2d 178, 194-95 (1992); *State v. Perry*, 209 N.C. 604, 606, 184 S.E. 545, 546 (1936); *State v. Strickland*, 307 N.C. 274, 283 n.1, 298 S.E.2d 645, 652 n.1 (1983), *overruled on other grounds by State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986).

Although a defendant's efforts to dispose of a victim's body after a homicide can support a finding of premeditation and deliberation, it also can support the contrary inference. It does not follow that

**STATE v. CINTRON**

[132 N.C. App. 605 (1999)]

every homicide followed by an effort to dispose of the victim's body was done with premeditation and deliberation. It is reasonable, in some cases, to infer that the defendant panicked after the killing and then attempted to hide or dispose of the body to prevent others from learning of a crime committed without premeditation and deliberation. The resolution of the conflicting inferences is for the jury.

In this case, we believe conflicting inferences can be drawn from the evidence supporting the submission of this case to the jury on premeditation and deliberation. Because the disposal of the body, the shooting in the face, and the placement of the gun beside the couch where Defendant was sitting do not mandate the sole inference of premeditation and deliberation, it was the prerogative of the jury to resolve the multiple inferences. *See State v. Rose*, 335 N.C. 301, 319, 439 S.E.2d 518, 527-28 (disposal of body after homicide could support finding of premeditation and deliberation but trial court also submitted second-degree murder for jury to determine), *cert. denied*, 512 U.S. 1246, 129 L. Ed. 2d 883 (1994). Furthermore, the State's own witness testified that before the shooting, the two men had been drinking alcohol, and were arguing about something she could not decipher. From this evidence, a jury *could* conclude that Defendant was provoked by Joel, thus negating premeditation and deliberation. *Thomas*, 332 N.C. at 556, 423 S.E.2d at 82 (lack of provocation is circumstance that can show premeditation and deliberation). Because conflicting inferences could be drawn from the evidence with respect to premeditation and deliberation, the trial court erred in not submitting second-degree murder to the jury. Because the State has failed to show beyond a reasonable doubt that the outcome would have been the same if second-degree murder had been submitted to the jury, Defendant is entitled to a new trial. *See Camacho*, 337 N.C. at 234-35, 446 S.E.2d at 14 (failure to instruct on second-degree murder when warranted is error of constitutional dimensions, and entitles the defendant to a new trial unless the State proves beyond a reasonable doubt that the outcome would have been the same even if the lesser-included offense was submitted); N.C.G.S. § 15A-1443(b) (1997). We have considered Defendant's remaining assignments of error carefully, and overrule them.

New trial.

Judge HORTON concurs.

Judge LEWIS dissents.

Judge LEWIS dissenting.

Because I do not believe sufficient evidence was presented to warrant submission of second-degree murder to the jury, I respectfully dissent. I note first that defendant filed a 41-page brief with this Court, in direct contravention of N.C.R. App. P. 28(j). Regardless of that ground for dismissing the appeal, however, I believe there is no error in this case.

Defendant presented no evidence at trial. The evidence presented by the State's witnesses tended to show that on the night of the murder, defendant and the victim had been drinking. Defendant's wife heard the two arguing while they were seated in the living room. Defendant's 30.06 rifle was not in its normal location in the bedroom closet, but rather was against the sofa beside defendant. Defendant's wife went outside briefly to feed her cat; while she was outside she heard a shot. When she returned to the living room, she smelled gun powder and saw defendant standing over the victim with the rifle pointed at the victim. The victim had been shot once through his right eye. Rather than call the police as his wife wanted to do, defendant threatened his wife and convinced her to help him hide the body and clean the living room. Defendant hid the body in a shed and later in the family car for months; defendant related elaborate stories to explain the stench of the rotting corpse. As the majority opinion correctly notes, this evidence is sufficient to support a finding of premeditated and deliberated murder. The majority believe, however, that the jury reasonably might find defendant lacked premeditation and deliberation when he killed the victim. The majority opinion holds a jury might reasonably conclude that defendant panicked and hid the body, or that defendant was legally provoked by the victim.

Defendant presented no evidence that he hid the body in panic after murdering the victim without premeditation and deliberation. Such a rationale for defendant's behavior is mere conjecture and not supported by the evidence. Furthermore, the majority opinion asserts that testimony from defendant's wife that the two men argued before the murder might raise the inference that defendant was provoked by the victim. "Anger and emotion frequently coincide with murder, but a court should instruct on murder in the second degree only when the evidence would permit a reasonable finding that the defendant's anger and emotion were strong enough to disturb the defendant's ability to reason." *State v. Perry*, 338 N.C. 457, 463, 450 S.E.2d 471, 474 (1994). No evidence whatsoever was presented that defendant

was so enraged as to be unable to reason, premeditate, or deliberate. Our Supreme Court explained:

> [E]vidence that the defendant and the victim argued, without more, is insufficient to show that the defendant's anger was strong enough to disturb his ability to reason. Without evidence showing that the defendant was incapable of deliberating his actions, the evidence could not support the lesser included offense of second-degree murder.

*State v. Solomon*, 340 N.C. 212, 222, 456 S.E.2d 778, 785, *cert. denied*, 516 U.S. 996, 133 L. Ed. 2d 438 (1995). Defendant presented no such evidence, and as such a verdict of second-degree murder would not be supported by the evidence. *See State v. Rose*, 339 N.C. 172, 195, 451 S.E.2d 211, 224 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995).

The evidence viewed as a whole does not support the submission of a second-degree murder charge to the jury. The test is not whether the jury could have convicted defendant of a lesser included offense, but whether the State showed each element of the crime charged with no conflicting evidence presented. *See State v. Walker*, 343 N.C. 216, 221-22, 469 S.E.2d 919, 922, *cert. denied*, 117 S.Ct. 254, 136 L. Ed. 2d 180 (1996). Here, there was no conflicting evidence from defendant or anyone else to indicate that defendant did not commit premeditated and deliberated murder. Defendant took the rifle from its normal place in the home, stood, pointed the gun at the victim, inflicted a fatal wound, and enlisted help in hiding the victim's body and other evidence of his crime. Indeed, the victim apparently remained seated throughout most of his stay and was not armed. As stated above, there was no evidence of provocation by the victim, defendant's conduct after the crime was quite incriminating, and the parties had disagreed. These facts are evidence of premeditation and deliberation. *See State v. Williams*, 308 N.C. 47, 69, 301 S.E.2d 335, 349, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177 (1983). Lesser included instructions are not to be given indiscriminately, *see State v. Strickland*, 307 N.C. 274, 286, 298 S.E.2d 645, 654 (1983), *overruled in part on other grounds by State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986), and here the evidence raised no "material question as to the existence of premeditation [or] deliberation." *State v. Brown*, 339 N.C. 426, 439, 451 S.E.2d 181, 189 (1994), *cert. denied*, 516 U.S. 825, 133 L. Ed. 2d 46 (1995). Accordingly, a second-degree murder instruction had no basis, and the jury was properly instructed. I find no error.