STATE OF NORTH CAROLINA v. JOHN CLARK, JR.

No. COA96-1487

(Filed 16 December 1997)

**1. Criminal Law § 114 (NCI4th Rev.)— probation and parole records—order for provision to State—no statutory violation**

The trial court's order that the Department of Correction provide to the State copies of defendant's probation and parole records which were provided to defendant was not made under N.C.G.S. § 15A-905(a) and thus did not violate that statute, even if there was no evidence that defendant intended to use those records at trial, because the records were not in the "possession, custody, or control of the State" within the meaning of N.C.G.S. § 15A-903(d).

**2. Criminal Law § 115 (NCI4th Rev.)— psychiatric evaluations of defendant—order for provision to State—harmless error**

The trial court erred by ordering defendant's psychiatric experts to prepare and deliver to the State written reports of their evaluations of defendant; however, this order did not violate defendant's constitutional rights to be free from compulsory self-incrimination and to present a defense and was not prejudicial to defendant where defendant introduced those reports into evidence at trial, and the State did not compel defendant or his experts to testify as to any matters disclosed during the course of defendant's psychiatric evaluations which defendant had not already put into evidence.

**3. Constitutional Law § 352 (NCI4th); Criminal Law § 18 (NCI4th Rev.)— diminished capacity defense—order for additional mental examination—rebuttal by State`**

The trial court's order that defendant undergo a third psychiatric evaluation for the purpose of allowing the State to rebut defendant's diminished capacity defense based on evaluations by two defense psychiatrists did not violate defendant's right against self-incrimination and his right to present a defense.

---

4. **Criminal Law § 418 (NCI4th Rev.); Evidence and Witnesses § 2302 (NCI4th)— opening statements —victim's conduct— irrelevant evidence—preclusion of forecast**

   In a prosecution of defendant for the first-degree murder of his wife, the trial court did not err by precluding defense counsel from forecasting during his opening statements evidence that the wife had a prior criminal record, used cocaine during the marriage, had extra-marital affairs, and had a baby by another man during her marriage to defendant because such evidence was not relevant to defendant's defense of diminished capacity, to the issue of premeditation and deliberation, or to any theory of defendant's case.

5. **Evidence and Witnesses § 264 (NCI4th)— aggressiveness of murder victim—irrelevancy**

   Evidence regarding an incident in which his wife shot defendant was irrelevant in a prosecution of defendant for the first-degree murder of his wife and her boyfriend where defendant did not claim that he acted in self-defense or that his wife was the aggressor at the time of the killings.

6. **Evidence and Witnesses § 609 (NCI4th); Indigent Persons § 24 (NCI4th)— denial of funds for expert's return—not denial of surrebuttal right**

   The trial court did not improperly deny defendant the right to present surrebuttal evidence by the denial of defendant's request for additional funds to bring his "blood spatter" expert witness back to court to rebut testimony by the State's rebuttal expert witness where the State's witness presented no new or additional evidence regarding the State's version of the crime but merely presented a version of the facts different from that of the defense, and defendant was thus not entitled to present surrebuttal evidence. N.C.G.S. § 15A-1226.

7. **Criminal Law § 467 (NCI4th Rev.)— prosecutor's closing argument—length of time to try defendant—time to think up defense—reasonable inference**

   The prosecutor's comments during closing argument about the length of time it took to try defendant for first-degree murder amounted to no more than an observation on the time it may have taken defendant to "think up" a defense and was a reasonable inference based on the evidence presented at trial.

**8. Criminal Law § 431 (NCI4th Rev.)— prosecutor's closing argument—speculation as to why witness didn't testify—no impropriety**

The prosecutor's closing argument in a first-degree murder trial about the failure of defendant's first psychiatrist to testify, including statements that defendant may have had to get a new psychiatrist because defendant told the first psychiatrist a different version of the killings than defendant told in court, merely raised an inference as to why one of defendant's witnesses had not testified and was not improper.

Appeal by defendant from judgment entered 7 December 1995 by Judge B. Craig Ellis in Robeson County Superior Court. Heard in the Court of Appeals 21 October 1997.

*Michael F. Easley, Attorney General, by Jeffrey P. Gray, Assistant Attorney General, for the State.*

*Margaret Creasy Ciardella, attorney for defendant-appellant.*

WYNN, Judge.

Having been convicted by a jury of the first-degree murder of his wife and her boyfriend, John Clark, Jr. seeks a new trial contending that the trial court committed prejudicial error by: (1) granting the State's request that it be given copies of his parole and probation records; (2) ordering his psychiatric experts to prepare and deliver reports of his mental condition to the State prior to trial; (3) ordering him to undergo a mental examination; (4) ruling at trial that certain evidence regarding the conduct of the victims be excluded; (5) not allowing him to present surrebuttal evidence at trial in response to certain evidence presented by the State; and (6) overruling his objection to certain statements made by the State during it's closing arguments. Because we find no prejudicial error in any of the trial court's rulings, we hold that Clark received a fair trial, free from prejudicial error.

The evidence at trial tended to show that: On September 25, 1992, the bodies of Clark's wife, Linda, and Garland Brooks were found in the marital home trailer of defendant Clark and Linda. At the time of the homicides, Clark had been separated from Linda for less than a week under a domestic violence protective order obtained by Linda.

The investigators found Brooks' body in the living room and evidence that he had been consuming beer. They found Linda's body partially nude in the bathroom. At the time of the murders, the couple's three minor children were in one of the back bedrooms of the trailer. A few hours after the killings, Clark surrendered to a sheriff's detective, admitted to committing the killings and signed a written confession.

In his statement, Clark stated that he had driven past his trailer, saw a van parked in the yard, parked his truck a short distance away, got a shotgun from his truck and then walked back to the trailer. He then entered the back door of the trailer and saw Brooks sitting in the living room drinking a beer and watching television. He shot Brooks and then heard his wife scream from the bathroom. He then broke the bathroom door down and shot his wife repeatedly. Thereafter, he left the trailer with his three children. His shotgun was found about sixty feet from the back corner of the trailer.

In addition to Clark's statement, the evidence showed an extensive history of violence with his wife—including Clark's conviction for assaulting and kidnaping his wife, and his wife's conviction for assaulting him with a deadly weapon. Other evidence tended to show that his wife had a history of drug usage and sexual infidelity during the couple's ten year marriage.

After being indicted for two counts of first-degree murder, Clark was tried capitally under the theories of felony murder, and premeditation and deliberation beginning at the 25 September session of the Robeson County Superior Court. The jury found him guilty of first-degree murder under the theory of premeditation and deliberation. Following a capital sentencing hearing, the trial judge sentenced him two consecutive terms of life imprisonment. This appeal followed.

## I.

[1] Clark first contends that the trial court committed prejudicial error by granting the State's request to obtain copies of his parole and probation records from the North Carolina Department of Corrections. He argues that the trial court's ruling violated N.C. Gen. Stat. § 15A-905(a), which provides for the disclosure of evidence by a defendant to the State, and that as a result of that ruling, his constitutional right not to testify against himself under both the state and federal constitutions was violated. We disagree.

N.C. Gen. Stat. § 15A-905(a) provides that if a defendant is granted any of the evidentiary matters set forth in § 15A-903(d), then upon motion by the State, the trial court must order that similar documentary evidence which "the defendant intends to introduce in evidence at trial" be furnished to the State for its inspection. Under N.C. Gen. Stat. § 15A-903(d), upon motion by defendant, a trial court must order the State to furnish to the defendant any documents or tangible objects "within the possession, custody, or control of the State," which are material to the preparation of his defense and which are intended to be used by the State as evidence at trial.

Citing to our Supreme Court's holding in *State v. White*, 331 N.C. 604, 419 S.E.2d 551 (1992) and this Court's holding in *State v. King*, 75 N.C. App. 618, 331 S.E.2d 291, *dis. rev. denied*, 314 N.C. 545, 335 S.E.2d 24 (1985) Clark argues that the trial court had no authority under N.C.G.S. § 15A-905(a) to order the disclosure of the Department of Corrections records because there was no evidence at the time the court entered its order that he *intended* to use those records at trial.

In this case, however, the trial court's order requiring that the defendant's probation and parole records be furnished to the State was not made under N.C.G.S. § 15A-905(a) because the records were in the control of the Department of Corrections and not in the "possession, custody, or control of the State" as envisioned by N.C.G.S. § 15A-903(d).

In *State v. Crews*, 296 N.C. 607, 616, 252 S.E.2d 745, 754 (1979), our Supreme Court held that "within the possession, custody, or control of the State," as used in N.C.G.S. § 15A-903(d), means that the documents are within the possession, custody, or control of the *prosecutor or those working in conjunction with him or his office* (emphasis added). Here, the records which were provided to both the State and the defendant were in the possession, custody and control of the Department of Corrections. During pretrial motions, Clark moved, and the court so ordered, that the Department of Corrections provide him with copies of his probation and parole records. The trial court then ordered the Department of Corrections, a state agency which was neither a party to this case nor a party working in conjunction with the State, to provide the State with the records it had furnished to Clark. Thus, the court did not order the State to provide these records under N.C.G.S. § 15A-903(d) because these records were not in the State's "possession, custody or control."

Since relief granted under N.C.G.S. § 15A-903(d) is a condition precedent to the court exercising its authority under N.C.G.S. § 15A-905(a), we find that the trial court did not violate N.C.G.S. § 15A-905(a) in ordering the Department of Corrections to provide the State with the defendant's probation and parole records.

## II.

[2] Next, Clark contends that the trial court committed prejudicial error in requiring that his psychiatric experts prepare and deliver to the State written reports of their evaluations of him. He argues that the trial court violated his federal and state constitutional rights to be free from compulsory self-incrimination and his right to present a defense. Although we agree that the trial court erred in ordering Clark's experts to provide the State with written evaluation reports on him, we conclude that under the facts of this case, that error was harmless.

In *State v. Bacon*, 337 N.C. 66, 446 S.E.2d 542 (1994), the trial court ordered defendant to submit written reports to the State as required by N.C.G.S. § 15A-905(b), which provides for the disclosure of reports of examinations and tests by a defendant. *See* N.C. Gen. Stat. § 15A-905(b) (1973). In *Bacon*, the defendant, like defendant Clark in this case, argued on appeal that his constitutional rights had been violated because the trial court improperly required, upon motion by the State, that his psychiatric expert compile and submit to the State a written report of his evaluation of defendant. In granting the State's request for the reports, the trial court in *Bacon* noted that it was required under N.C.G.S. § 15A-905(b) to order the written reports because it had previously granted the relief sought by the defendant under N.C.G.S. § 15A-903(e). *Bacon*, 337 N.C. at 84, 446 S.E.2d at 550. Based upon this rationale, our Supreme Court held that the "trial court's order provided no more than the reciprocal discovery requirements under N.C.G.S. § 15A-905(b)," and that therefore, defendant's constitutional rights had not been violated. *Id.* According to the court, the trial court was "merely address[ing] the district attorney's concern that the expert would examine the defendant and never prepare a written report, thus hindering the State's ability to cross-examine the expert." *Id.* at 85, 446 S.E.2d at 550.

The State argues that the facts in the instant case and those in *Bacon* are identical and that therefore the trial court properly relied on it to order defense experts to submit their written evaluation reports to the State. We disagree.

STATE v. CLARK

[128 N.C. App. 87 (1997)]

Unlike the present case, in *Bacon*, the trial court granted the defendant's request under N.C.G.S. § 15A-903(e) that the State provide it with reports of the examinations and tests that the State had performed on defendant. To reciprocate that grant of relief, the trial court then ordered the defense experts, as required by it under N.C.G.S. § 15A-905(b), to provide the State with written reports of their evaluations. Achieving the reciprocity required under N.C.G.S. § 15A-905(b) was therefore, an essential basis in *Bacon* for both the trial court's ruling and our Supreme Court's decision to uphold that ruling on appeal.

In contrast, in the instant case, defendant Clark did not request that the state provide him with psychiatric tests or reports evaluating him. Thus, the reciprocation under *Bacon* is not present in this case. We, therefore, conclude that the holding in *Bacon* is inapplicable under the facts of this case. Accordingly, we find that the trial court erred by ordering defendant's experts to provide written reports of tests performed on the defendant to the State.

However, we conclude that the error committed by the trial court was not prejudicial to defendant's case. *See State v. Paul*, 58 N.C. App. 723, 294 S.E.2d 762, *cert. denied*, 307 N.C. 128, 297 S.E.2d 402 (1982); *Yost v. Hall*, 233 N.C. 463, 64 S.E.2d 554 (1991) (holding that a defendant is entitled to a new trial only if the impropriety is shown to be prejudicial).

In identifying the specific constitutional injury suffered by him, Clark argues that his constitutional right to be free from compulsory self-incrimination, and his right to present a defense were violated by the court's error because, he argues, information gathered by an examining psychiatrist may include not only defendant's "dreams, fantasies, sins, and his shame," but may also expose defendant's role in potentially incriminating events.

Where, as here, Clark actually introduced into evidence at trial the same reports that he was required to provide to the State, we are not persuaded by Clark's argument that the disclosure of information contained in those reports prejudiced his rights to a fair trial. In fact, we can find no instance in the record in which the State compelled defendant or his experts to testify as to matters disclosed during the course of defendant's psychiatric evaluations which Clark himself had not already put into evidence. In short, nothing in the record indicates that the trial court's order in any way prejudiced Clark's case. Accordingly, we hold that although the trial court improperly ordered

Clark's experts to provide the State with written reports of their evaluations of him, that order did not serve to deprive Clark of his constitutional right to be free from compulsory self-incrimination and his right to present a defense.

## III.

[3] Clark next argues that the trial court committed prejudicial error in ordering him to undergo a psychiatric evaluation at the State's request, after he had already undergone two evaluations by his own psychiatrists. Although intending to offer the testimony of his psychiatrists to show his diminished capacity, Clark nonetheless contends that the trial court, in ordering him to undergo this third evaluation, violated his federal and state constitutional rights to be free from compulsory self-incrimination and his right to present a defense. We disagree.

When a defendant attempts to establish a diminished capacity defense and introduces expert testimony regarding his mental status, the State may then introduce expert testimony derived from prior court-ordered psychiatric examinations in order to rebut that testimony without implicating the fifth amendment of the U.S. Constitution or Article I, Section 23 of the North Carolina Constitution. *See State v. Huff*, 325 N.C. 1, 381 S.E.2d 635 (1989); *State v. Jackson*, 77 N.C. App. 491, 335 S.E.2d 903(1985); *Buchanan v. Kentucky*, 483 U.S. 402, 107 S. Ct. 2906, 97 L. Ed.2d 336, *reh'g or modification denied*, 483 U.S. 1044. 108 S. Ct. 19, 97 L. Ed.2d. 807 (1987); *U.S. v. Byers*, 740 F.2d 1104 (D.C. Cir. 1984). In *Huff, supra*, our Supreme Court specifically addressed the constitutional propriety of multiple psychiatric examinations when used by the State for the purpose of rebutting a defendant's assertion of the insanity defense. There, the Court held that "a fair opportunity to rebut may include more than one examination of defendant." *Huff*, 325 N.C. at 47, 381 S.E.2d at 661. In reaching this conclusion, the Court set forth what it believed were generally, "sound reasons" for examining a defendant more than once:

> The conclusions of any mental health expert, his diagnoses and postdictions, are only as reliable as the data on which those conclusions are based. If there is reason to believe that defendant's evaluation was based on incomplete or distorted data, then there is good reason to reevaluate the individual in light of more complete or more accurate data. The skill of the clinician interpreting the raw data can also affect the validity of a diagnosis or other

clinical judgment. Furthermore, retesting is often useful in defining the parameters of a mental illness. Although the underlying condition may always be present, the mental illness may over time manifest itself with symptoms of varying intensity. Knowing the parameters of the illness may increase the reliability of an expert's postdictions about a defendant's mental condition.

*Id.*

Although the issue in *Huff* involved the State's right to rebut a defendant's insanity defense, and in this case Clark asserted a diminished capacity defense, we nonetheless believe that the rationale set forth by the *Huff* court applies here. *Huff* implicitly empowers a trial court with the authority to require a defendant to submit to more than one mental examination for the purpose of inquiring into his mental status at the time of the alleged offense when that mental status is made an issue, in some form or another, by the defendant. Therefore, in light of the "sound reasons" made clear by the court in *Huff*, we hold that the trial court in this case committed no error in ordering Clark to undergo a third psychiatric evaluation for the purpose of allowing the State to rebut his diminished capacity defense.

## IV.

[4] Clark next argues that the trial court committed prejudicial error in granting the State's request that he be precluded from offering certain evidence regarding the conduct of the victims, specifically, his wife. Again, we disagree.

Clark contends that the trial court violated the North Carolina Rules of Evidence and deprived him of his constitutional right to due process, including his right to present a defense, by precluding him from forecasting during his opening statements, evidence regarding: the prior convictions of his wife; her use of cocaine during the marriage; her affairs with other married men; the fact that she had a baby by another man; and an incident in which she shot him. By not allowing him to point out this evidence in his opening statements, Clark argues that the trial court effectively precluded him from introducing into evidence his version of the marital relationship and prejudiced his defense of diminished capacity. As it was the State who intended to present his wife as the non-violent person in the marital relationship, Clark argues that he was therefore entitled to introduce, by way of his opening statement, evidence which tended to rebut that claim.

We would agree with Clark's assertion if the evidence which he sought to introduce regarding the marital relationship between he and his wife was both relevant to the theory of his case and of some probative value to his defense of diminished capacity. Under our rules of evidence, all proffered evidence is subject to Rule 402 and 403. Rule 402 precludes the admission of irrelevant evidence. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (1992). Rule 403 provides that evidence, although relevant, may be excluded where any "probative value is substantially outweighed by unfair prejudice, confusion of the issues, or misleading of the jury." N.C. Gen. Stat. § 8C-1, Rule 403 (1992).

In this case, the evidence that Clark intended to mention during his opening statements and introduce later at trial was neither probative of whether Clark's mental status was of a diminished capacity at the time of the killings nor whether he lacked the malice, premeditation, or deliberation necessary to convict him of first-degree murder. Contrary to Clark's assertion, the fact that his wife had a prior criminal record, used drugs during the marriage, had extra-marital affairs, and had a baby by another man during her marriage to him were simply of no relevance to any theory of his case. At most, this evidence was probative of a justifiable homicide defense, which in this state is lawful only by reason of perfect self-defense or imperfect self-defense, in which case the defendant's culpability is merely reduced, not excused. *State v. Norman*, 324 N.C. 253, 266, 378 S.E.2d 8, 16 (1989). Defendant, however, makes no claim of self-defense, perfect or imperfect, and we are reluctant to conclude that such evidence is probative of his defense of diminished capacity. Indeed, we believe that if such evidence were introduced at trial, it would only serve to subtly permit the jury to view Clark's wife as the "bad person" and distract it from considering the focal issue of what actually happened on the day of the killings. *See* N.C. Gen. Stat. § 8C-1, Rule 404, Official Commentary quoting Fed. R. Evid. 404, Advisory Committee Note.

[5] Likewise, evidence regarding the aggressive nature of his wife was also irrelevant and of no probative value. Clark did not assert a claim of self-defense or that his wife was the aggressor at the time of the killings; therefore, the aggressiveness of his wife during the marriage was irrelevant and thereby, inadmissible. *See State v. Leazer*,

337 N.C. 454, 458, 446 S.E.2d 54, 56-57 (1994) (holding that because there was no reliance by defendant on claim of self-defense or justifiable homicide, evidence of the victim's prior convictions for murder was properly excluded). Accordingly, we hold that the trial court did not err in precluding defense counsel from mentioning during his opening statements evidence regarding the conduct of defendant's wife during the course of the couple's marriage. We note in passing that although defendant was not permitted to mention the subject evidence during his opening statement, the gravamen of the evidence was nonetheless admitted during the course of the trial.

## V.

**[6]** Next, Clark contends that the trial court committed prejudicial error in refusing to allow him to present surrebuttal evidence, and that this error deprived him of his constitutional right to due process, specifically his right to present a defense. We disagree.

At the outset, the State calls our attention to what it refers to as, the "misleading" nature of this assignment of error. The State points out in its brief that what actually occurred in regards to Clark's motion to present surrebuttal evidence is that Clark moved the court for additional funds so that their out-of-town expert witness could be flown back to Robeson County to rebut the State's rebuttal expert witness. Because it was that specific motion which the trial court denied, the State contends that the trial court therefore did not deny defendant the right to present evidence in surrebuttal.

However, in a criminal case such as this in which the breadth of defendant's defense is contingent upon the resources provided to it by the State, the denial of a defense attorney's request for additional funds to bring a witness back to court for further testimony is tantamount to denying the defendant the right to present rebuttal or, as in this case, surrebuttal evidence. With that in mind, we proceed to address the merits of Clark's assignment of error.

The presentation of additional evidence, rebuttal, and surrebuttal evidence in a criminal trial is governed by Subsection 1226 of Chapter 15A of North Carolina's Criminal Procedures Act. That section provides in pertinent part, that:

[e]ach party has the right to introduce rebuttal evidence concerning matters elicited in the evidence in chief of another party. The judge may permit a party to offer new evidence during rebuttal which could have been offered in the party's case in chief or dur-

ing a previous rebuttal, but if evidence is allowed, the other party must be permitted further rebuttal.

In interpreting this statute and ones similar to it in other states, our federal courts have consistently held that it is an abuse of discretion for the trial court to disallow surrebuttal evidence by the defendant when the State's rebuttal testimony presents new issues not raised in the defendant's case in chief. *United States v. King*, 879 F.2d 137 (4th Cir. 1989); *see also Merrill v. United States*, 338 F.2d 763 (5th Cir. 1964). Therefore, in determining whether a defendant is entitled to present surrebuttal evidence, the dispositive issue is whether the state presented new evidence on rebuttal.

In the instant case, Clark presented expert testimony in his case-in-chief on "blood splatter" to support his theory that at the time he shot both victims they were sitting in a recliner with his wife sitting naked on the lap of the male victim. On rebuttal, the State offered the testimony of Special Agent P.D. Weaver, an expert himself in blood-splatter evidence, in order to assert their theory that Clark's wife was in the bathroom at the time of the shootings and that the male victim was sitting on the sofa. The State contends on appeal that no new evidence was presented by Special Agent Weaver during the course of his testimony, and that therefore, Clark was not entitled to present surrebuttal evidence. With this contention, we agree.

Our review of Special Agent Weaver's testimony reveals that in giving his expert opinion, he presented to the jury no new or additional evidence regarding the State's version of the crime; instead, he merely presented a version of the facts "different" from that of the defense. Moreover, his testimony was wholly consistent with the evidence of other investigating officers presented by the State in its case-in-chief. Therefore, we hold that the trial court did not err in denying Clark's request to present surrebuttal evidence.

## VI.

**[7],[8]** Finally, we reach Clark's assertion that he is entitled to a new trial because the trial court committed prejudicial error by overruling his objections to certain statements made by the prosecutor during his closing arguments.

In the first statement to which Clark objected, the prosecutor posed the following rhetorical question to the jury:

Why, some of you are asking, why has this taken so long? Why have we extended this thing out to two months? One of the rea-

sons, ladies and gentlemen, or the main reason for that is the defendant.

Over the defense's objections, the prosecutor continued by stating:

[THE STATE]  For almost three years he stuck with his version that he gave to the police.

[DEFENSE]  Objection.

[THE STATE]  And then just prior to trial—and he's testified to this—first time he's ever told this version, he comes up with this version.

[DEFENSE]  Objection.

[THE COURT]  Overruled.

Still even further into his closing argument, the prosecutor stated as follows:

[THE STATE]  You heard testimony that Dr. Hattem didn't get involved in this case until September. That's the month we started this case, ladies and gentlemen. What happened to the psychiatrist that was involved back in 1993?

[DEFENSE]  Objection, Your honor. There's been no testimony.

[THE COURT]  Sustained.

[DEFENSE]  And motion to strike.

[THE STATE]  Dr. Hattem testified that Dr.—can't even think of his name from Winston Salem—had examined, had testified the defendant in January of 1993. Told us that. Where is he, ladies and gentlemen? Did the defendant not tell him the right thing?

[DEFENSE]  Objection, Your honor.

[THE COURT]  Overruled.

[THE STATE]  Did the defendant tell him the story, the same story he told the police? According to the defendant, he did. Because 1995 was the first time he'd ever told this version that he told in court. And he told us that. Well, if he told the psychiatrist the wrong thing, we got to get another one. And that's exactly what they did, ladies and gentlemen. They went and got another one. The last minute. They bit the mule. Invented a new story.

**STATE v. CLARK**

[128 N.C. App. 87 (1997)]

**[DEFENSE]**  Objection to inventing a story, your honor.

**[THE COURT]**  Overruled.

In general, the closing arguments of counsel are left to the control and discretion of the presiding judge, and counsel is allowed wide latitude in the argument of hotly contested cases. *State v. King*, 29 N.C. 707, 264 S.E.2d 40 (1980). Thus, counsel may argue facts in evidence and all reasonable inferences arising from those facts. *State v. Miller*, 88 N.C. 52, 220 S.E.2d 326 (1975). However, counsel may not interject facts and personal beliefs not supported by the evidence, *State v. Williams*, 317 N.C. 474, 346 S.E.2d 161 (1986), or make erroneous statements of the law. *State v. Cole*, 241 N.C. 576, 86 S.E.2d 203 (1955).

Applying the foregoing principles to the challenged statements made by the prosecutor in this case, we hold that the trial court committed no error in overruling defendant's objections to those statements. We believe the statements made by the prosecutor regarding the length of the trial, when read together, amount to no more than an observation by the State of the lengthy amount of time it may have taken defendant to "think up" a defense. Based upon the facts which were placed into evidence at trial, this was a reasonable inference to be put to the jury. *See State v. Rogers*, 323 N.C. 658, 664, 374 S.E.2d 852, 856 (1989) (holding that a prosecutor's comments speculating that the defense of intoxication was an afterthought was a legitimate inference arising out of the evidence). The same is true of the statements made by the prosecutor regarding the defendant's experts. In making those particular statements, the prosecutor was merely raising an inference as to why one of the defendant's witnesses had not testified. To make such an inference is permissible. *See State v. Craig*, 308 N.C. 446, 458-59, 302 S.E.2d 740, 748 (1983) (holding that the state is allowed to draw the jury's attention to the fact that defendant failed to produce evidence which contradicted the state's case, and that it was also permissible for the state to draw the jury's attention to the failure of the defendant to produce exculpatory testimony from witnesses available to the defense). Accordingly, this assignment of error is without merit.

## CONCLUSION

In the trial of John Clark, Jr., we hold that he received a fair trial, free from prejudicial error.

No prejudicial error.

Judges WALKER and SMITH concur.